440 N.E.2d 710 (1982)
In the matter of Garden & Turf Supply Corporation, Bankrupt.
Ward W. Miller, Trustee, Appellant-Plaintiff,
v.
KELLY STRANGE D/B/A MIDWEST LIQUIDATORS AND MIDWEST LIQUIDATORS, Inc., Appellees-Defendants.
No. 4-1181A177.
Court of Appeals of Indiana, Fourth District.
October 14, 1982.
Rehearing Denied December 7, 1982.
*712 Allen N. Wheat, Latriealle Wheat, Wheat & Wheat, Indianapolis, for appellant-plaintiff.
R.M. Kroger, Julie Z. Schmitt, Kroger, Gardis & Regas, Indianapolis, for appellees-defendants.
CONOVER, Judge.
Ward W. Miller, as bankruptcy trustee of Garden & Turf Supply Corporation (Trustee), appeals the trial court's denial of his motion for summary judgment and its entry of summary judgment in favor of Kelly Strange d/b/a Midwest Liquidators, and Midwest Liquidators, Inc. (Auctioneer).
We affirm.

ISSUES[1]
1. Did the trial court err in finding the notice given to creditors was adequate to satisfy the requirements of the Indiana Bulk Transfer Act?
2. Did the trial court err in finding Auctioneer prepared and retained a schedule of property which satisfies the requirements of the Indiana Bulk Transfer Act?
3. Did the trial court err in finding Auctioneer had obtained a certified list of creditors as required by the Indiana Bulk Transfer Act?
4. Did the trial court err in concluding the products of discovery were insufficient to prove damages?
5. Did the trial court err in refusing to strike an affidavit which was not based upon personal knowledge?
6. Did the trial court err when it failed to consider the Trustee's motion for summary judgment and Auctioneer's motion for summary judgment separately?
7. Did the trial court fail to decide certain issues which had to be resolved before summary judgment could properly be entered in favor of Auctioneer?
8. Did the trial court enter inaccurate and incomplete findings of fact in granting summary judgment in favor of Auctioneer and in denying summary judgment in favor of the Trustee?

FACTS
Garden & Turf Supply Corporation, an Indiana corporation, is a wholesale lawn and garden distributor. Michael J. Doherty owns all issued and outstanding stock of the corporation. Doherty also serves as president, chairman of the board and chief operating officer.
The unaudited monthly balance sheets of the corporation indicate its insolvency after September, 1977. On April 21, 1978, the corporation, by Michael J. Doherty, and Auctioneer entered into a "Contract to Sell Merchandise and Equipment at Public Auction." The auction was conducted on June *713 10 and June 14, 1978. The net proceeds from the auction were $101,943.55.
On September 12, 1978, an involuntary creditor's petition was filed in the United States District Court, Northern District of Indiana, Fort Wayne Division, seeking an adjudication of the corporation as bankrupt. It was so adjudged on January 13, 1979. Ward W. Miller was then appointed trustee in bankruptcy of the corporation.
Miller, as Trustee, brought this suit alleging Auctioneer failed to comply with the requirements of the Indiana Bulk Transfer Act.[2] After discovery, the Trustee moved for summary judgment. Auctioneer then filed a response which the trial court treated as a motion for summary judgment. The trial court denied Trustee's motion and entered summary judgment in favor of Auctioneer.[3] Trustee appeals.

DISCUSSION AND DECISION

I. STANDARD OF REVIEW
When reviewing the trial court's entry of summary judgment, this court must determine whether there is any genuine issue of material fact and whether the law was applied correctly. Zalewski v. Simpson, (1982) Ind. App., 435 N.E.2d 74; Carroll v. Lordy, (1982) Ind. App., 431 N.E.2d 118. As stated in Podgorny v. Great Central Insurance Co., (1974) 160 Ind. App. 244, 311 N.E.2d 640:
The burden is on the proponent to establish that no genuine issue as to any material fact exists. Accordingly, for purposes of determining whether to grant the motion: (a) facts set forth by the opponents' affidavits will be taken as true; (b) the depositions, admissions, etc. are to be liberally construed in favor of the opponent; and (c) any doubt as to the existence of a genuine issue as to a material fact must be resolved against the proponent of the motion.
Finally, to help insure that real factual issues may not be evaded, supporting and opposing affidavits must be made on personal knowledge, must show affirmatively that the affiant is competent to testify to the matters covered, and must set forth facts as would be admissible in evidence. TR 56(E); .... Similarly, under the process of construction favoring the opponent of the motion, matters contained in depositions and answers to interrogatories are to be considered in the light of their capability of being admitted into evidence at a trial. (citations omitted)
Id. at 254-55, 311 N.E.2d at 648.

II. ADEQUACY OF NOTICE
Trustee argues the trial court erred when it entered summary judgment in favor of Auctioneer because it failed to give adequate notice of the auction to the bankrupt corporation's creditors. He argues the notice was inadequate because it was incomplete, inaccurate and was not sent by the proper person. We disagree.
Article 6 of the Uniform Commercial Code[4] governs bulk transfers. Auctions which amount to bulk transfers are governed by IC XX-X-X-XXX.[5] IC XX-X-X-XXX requires the auctioneer to send notice to the creditors of the transferor named on the list of creditors prepared by the transferor and to any creditor of the transferor known to the auctioneer. The key questions presented in this case are 1) what information must be included in the notice to creditors, and 2) who may actually send the notice.
In this case, the notice sent to creditors[6] read as follows:
1. Kelly Strange d/b/a Midwest Liquidators (Auctioneer) intends to sell at auction the materials, supplies, merchandise, *714 equipment, inventory and all other personal property belonging to Garden & Turf Supply Corporation.
2. The name and address of Garden & Turf Supply Corporation as known to the Auctioneer is 201 Main Street, New Haven, Indiana 46774.
3. The name and address of the Auctioneer is Kelly Strange d/b/a Midwest Liquidators, 1453 East Washington Street, Indianapolis, Indiana.
4. The auction will be held beginning at 9:00 A.M. to 9:00 P.M. on June 10, 1978, June 13, 1978, and June 14, 1978, at the principal office of Garden & Turf Supply Corporation, 201 Main Street, New Haven, Indiana 46774, and continue until concluded.
The notice was dated May 26, 1978, and was signed Kelly Strange d/b/a Midwest Liquidators with Michael J. Doherty's initials under the signature.
Trustee argues this notice is insufficient because it should have contained all the information required of a non-auctioneer transferee as set out in IC XX-X-X-XXX. Auctioneer responds section 107 does not require all section 106 information be given by the auctioneer to the creditors. Section 107 merely states notice of the auction is required.[7]
What must be included in a Section 107 notice? To answer that question we must determine the purpose of such notice. Initially it must inform the creditor an auction of his debtor's property will be held.
Beyond this, very little protection is given and very little protection can be given by statute. Armed with the requisite notice, the next step would be up to the creditors involved to protect their interests in whatever manner possible under local procedural rules.
3A Bender's U.C.C. Serv. (MB) § 15.01 (1982). When the creditor receives notice, he has at least three choices, (a) seek an injunction to prevent the auction, (b) file an involuntary bankruptcy petition, or (c) do nothing and hope the auction produces sufficient income to pay off all debts. However in order to make such a decision, the creditor needs information so he can intelligently protect himself from a fraudulent conveyance or unnecessary loss.
The few authors which have made statements regarding the notice requirement for auctions are split as to how they read the statute. Some argue that without complete information the notice would be meaningless.[8] Others argue since the statute does not specifically mandate this extensive notice, it is not required.[9]
*715 We are not at liberty to rewrite section 107 to mandate auctioneers to give the notice required by section 106. We must construe the statute according to its plain meaning. Barr v. State, (1980) Ind. App., 400 N.E.2d 1149.
Due to the special treatment of auctions under the Act, and the failure to specifically incorporate the non-auction notice requirements into section 107, the non-auction notice requirements are not required in the auction setting. Rather, reasonable notice is required. Such notice would contain the date, time, and place of the auction, the general nature of the property to be sold (e.g. inventory), the name and address of the debtor and the name and address of the auctioneer. The notice here forwarded to creditors satisfies these requirements.
The Trustee also argues the notice given was inaccurate. He claims the dates listed on the notice as the dates of the auction, June 10th, 13th and 14th, 1978, are incorrect. Actually the auction was held only on June 10th and 14th. June 13th was an inspection day. He also claims the name of the auctioneer listed on the notice, Kelly Strange d/b/a Midwest Liquidators, was incorrect. Actually Midwest Liquidators, Inc., contracted to conduct the auction.
We agree these errors are improper. The notice to creditors is designed to provide them with accurate information. However, this does not mean a failure to include a comma, an "Inc." or something of equivalent significance will cause the notice to fail unless that error misleads the creditor.
Here, the dates of the actual auction were listed. The additional day named which was used for inspection was not irrelevant to the creditor. Furthermore, we cannot say this error misled any creditor. As to the real identity of the auctioneer, we find the address listed on the notice was not only the address of Kelly Strange d/b/a Midwest Liquidators but was also the address of Midwest Liquidators, Inc. which had executed the auction contract with Garden & Turf Supply Corporation. The creditors were not misled.
Next, the Trustee argues the notice which was given was prepared and sent by the wrong person. Michael J. Doherty signed and sent the notices to the creditors named on the list prepared by one of the corporation's employees. The Trustee argues Doherty was in effect the corporation since he was its sole shareholder and chief officer. He further claims since Doherty was the corporation and the statute requires the Auctioneer to send notice to the creditors, the notice requirement was not satisfied. The Auctioneer argues it properly authorized Doherty to act as its agent in preparing and sending the notices. The Trustee maintains the Auctioneer could not properly delegate its responsibilities under the Act to Doherty.
The Bulk Transfer Act is very explicit in its requirement that the Auctioneer send the notice.[10] Only the term "auctioneer" is used; the terms "auctioneer or his agent" or "auctioneer, or the transferor debtor if the auctioneer so authorizes" are not used. This is in contrast to section 6-104(2) where the transferor "or his agent" may sign and swear to the list of creditors.
A literal reading of the statute requires the auctioneer to send the notice to creditors, not an agent. However, IC XX-X-X-XXX provides for liberal construction of our commercial code. All creditors on the list of creditors received notice.[11] The purpose of the statute was satisfied. Service of the notice by an agent was harmless error.

III. SCHEDULE OF PROPERTY
Trustee next alleges the trial court erred when it found Auctioneer had satisfied its duty to prepare and retain a schedule *716 of property under IC XX-X-X-XXX(3)(a) since it prepared only an inaccurate and incomplete catalog for prospective purchasers, and auction ticket sheets which were altered during the auction. Auctioneer admits the catalog was incomplete but relies on the ticket sheets prepared prior to the auction as sufficient to constitute a schedule of property.
IC XX-X-X-XXX(2) requires the transferor to "assist in the preparation of a schedule of the property to be sold, ... prepared as before stated (section 6-104)." Further, section 6-107(3)(a) requires the auctioneer to "prepare and retain the schedule of property for the period stated in this Article (section 6-104)."[12] Section 6-107 contains no definition of a "schedule of property." However, section 6-104(1)(b) provides the transfer will be ineffective unless "the parties prepare a schedule of the property transferred sufficient to identify it."
The test of whether or not the ticket sheets are sufficient to satisfy the statute is whether they sufficiently identify the property transferred. The Trustee only questions the sufficiency of these ticket sheets here because they could be altered at Auctioneer's will. He agrees in some cases the sheets would be sufficient to identify the property.[13]
The ability to alter the slips and the actual alteration during the auction here seems to actually go to the Auctioneer's duty to preserve a copy of the schedule of property, not to identify it. Here alterations were admittedly made on the ticket sheets during the auction, as is customary during auctions when individual lots of merchandise are grouped together for sale as one in some cases. The Trustee claims this is a failure to preserve a schedule of the property to be sold, as required by the statute, and the sheets only list the property that actually was sold. We find although alterations were made, they were de minimus when compared to the aggregate amount sold. The statute was satisfied.
Also, the ticket slips were fully prepared the day before the auction. We are not told when on that day they were finished but only that the creditors could have inspected them immediately before the auction. The statute requires no more. Here the creditors received notice which contained a general description of the property to be sold. They were sufficiently alerted. They had ten days in which they could have acted to determine if the property they sold to the debtor was part of the property to be auctioned. We find no error.

III. SWORN LIST OF CREDITORS
Trustee argues the trial court erred in holding Auctioneer complied with IC XX-X-X-XXX(3)(a) and XX-X-X-XXX(2) which require the auctioneer to obtain a sworn list of creditors from the debtor transferor. He claims Auctioneer received two sworn statements and one list of creditors prepared on a different date from those of the two statements. Auctioneer responds the first *717 statement accompanied an insufficient list of creditors and was rejected. The second sworn statement was accompanied by the list of creditors which had been completed only a few days before the statement was signed. We find no error here.
IC XX-X-X-XXX(3)(a) and -104(2) require the auctioneer to receive a sworn list of creditors. The question here is whether a sworn list of creditors can be created by a sworn statement accompanied by a list of creditors prepared a few days earlier. Once again there are no cases on this point in Indiana or elsewhere. The statute does not define the phrase "sworn list of creditors."
We hold a document signed under oath which swears that an accompanying list is a complete list of creditors satisfies the requirement. Here, the difference in dates of the documents is not problematic. The list of creditors was not prepared until at least May 26, 1978. The sworn affidavit was signed on May 31, 1978. The statute does not require the actual list and the oath which attests to its completeness be executed on the same day. As long as the actual list of creditors is accompanied by a sworn statement the list is complete as of the date of the statement, the statute is satisfied.

IV. DAMAGES
The Trustee argues the trial court erred in holding he had not proven damages and therefore could not recover on his claim. We disagree.
IC XX-X-X-XXX(4) provides:
Failure of the auctioneer to perform any of these duties does not affect the validity of the sale or the title of the purchasers, but if the auctioneer knows that the auction constitutes a bulk transfer such failure renders the auctioneer liable to the creditors of the transferor as a class for the sums owing to them from the transferor up to but not exceeding the net proceeds of the auction. If the auctioneer consists of several persons their liability is joint and several.
This statute requires proof of two things in order to recover damages: 1) a failure of the auctioneer to follow required procedures and 2) the amount of damage. Here, the Trustee has not shown Auctioneer failed to satisfy the statutory requirements. There is no error.

V. AFFIDAVIT
Trustee next alleges the trial court erred when it failed to strike the affidavit of Kelly Strange because it was not based on personal knowledge as required by Ind. Rules of Procedure, Trial Rule 56(E). We agree.
Kelly Strange's affidavit states as follows:
1. Affiant is a Defendant in the above-entitled cause and authorized by the Defendant corporation to do business under the name and style of Midwest Liquidators.
2. On the dates of June 7, June 8 and June 9, 1978, the auctioneers prepared a schedule of property of Garden & Turf Supply Corporation in accordance with the Indiana statutes pertaining to the same.
3. At no time either prior to or subsequent to June 9, 1978, have any of the creditors of Garden & Turf Supply Corporation requested a copy of the schedule of property or made any other type of inquiry as to the assets to be sold or that were sold at the auction.
4. It is the customary usage and practice of the auctioneer trade that the auction ticket sheets, such as attached to and made a part of Defendant's Motion for Summary Judgment as Exhibit 3, are made available on the day of the sale comprise the schedule of property to be sold at auction.
5. Midwest Liquidators, Inc. prepared the auction catalog as a courtesy to the bidders at the auction and not through statutory requirement.
6. Due to breakage, theft during inspection, combining assets at the sale and other unpredictable circumstances, it is the general practice of the auctioneer *718 trade to make alterations in these schedules of property at the auctions themselves.
7. The auction ticket sheets of Garden & Turf Supply Corporation were altered only to conform to the actual sale and all alterations were made due to factors that occurred in the normal course of the auction, such as those described in paragraph 6 above.
8. On or about May 26, 1978, and more than ten (10) days prior to the auction, notice of the auction was mailed, certified first class United States mail, postage prepaid, to all parties listed on the sworn listing of creditors dated May 31, 1978, as well as to all creditors and persons who were known to me to hold or assert claims against Garden & Turf Supply Corporation.
9. At the time the notices of auction were mailed, the amount to be realized from the auction was unknown, therefore making it impossible to state the method in which creditors would be paid or whether creditors would be paid in full.
10. Midwest Liquidators, Inc. specifically authorized and conferred the power upon Michael J. Doherty to sign the notices on their behalf.
11. On May 31, 1978, Midwest Liquidators, Inc. received a list of the creditors of Garden & Turf Supply Corporation.
12. The list of creditors was sworn to by the transferor, Garden & Turf Supply Corporation, through an Affidavit dated May 31, 1978, which accompanied the list of creditors.
Further Affiant saith not.
The Trustee objects to paragraphs 2, 3, 4, 5, 6, 7, 8, 10 and 11 of this affidavit.
First, the Trustee argues there was no averment of personal knowledge as required. However, in French v. Hickman Moving and Storage, (1980) Ind. App., 400 N.E.2d 1384, the court held:
[T]he mandate of TR. 56(E) as to personal knowledge is met even though the affidavit does not contain a recital to that effect. Thus, the absence of a prefatory remark in the Hickman affidavit averring personal knowledge is not fatal because, as will be discussed, its contents show that the material parts are statements within her personal knowledge. (citations omitted)
Id. at 1386-87. Therefore, lack of a personal knowledge averment is not error if the rest of the material parts of the affidavit are based on personal knowledge.
As to the contested paragraphs, Trustee argues there is no indication in any of the pleadings or discovery materials Strange was present during the auction or during the preparation of the ticket sheets, he was authorized by Midwest Liquidators, Inc. to make statements on its behalf, he was familiar with the customs and practices of the auctioneering business or he was present at the time the notices to creditors were mailed. Auctioneer responds the statements are based on personal knowledge, knowledge as an officer of Midwest Liquidators, Inc., the evidence is also found in another part of the record, or the statement is immaterial to the case.
There is in fact no indication in any of the answers to interrogatories that Strange was present during the auction or during the preparation of the ticket sheets. There is no indication in the record Strange was an officer of Midwest Liquidators, Inc. The bald assertion of that fact in Auctioneer's brief is insufficient. Also, there is no evidence that Strange learned of the information in the normal course of business or due to his intimate knowledge of the workings of the corporation. Such fact distinguishes this case from French. Therefore, Strange's alleged position with Midwest Liquidators, Inc. does not support his assertions in the affidavit.
Auctioneer's other arguments also fail to prove personal knowledge. The presence of the information in another part of the record does not provide Strange with personal knowledge especially when the materials referred to are the answers Strange made to interrogatories. Trustee is correct when he argues the repetition of a statement does not make it true. However, the information contained in the affidavit can be found *719 elsewhere in the documents of discovery. We will affirm the trial court where it reaches the correct result for the wrong reasons. Husted v. McCloud, (1982) Ind. App., 436 N.E.2d 341, 347. The error was harmless,[14] even though the trial court did refer to and rely on these contentions.[15]

VI. MOTIONS FOR SUMMARY JUDGMENT
The Trustee also argues the trial court erred when it granted summary judgment in favor of Auctioneer because it failed to consider the cross motions for summary judgment separately. Auctioneer replies it did not move for summary judgment, the court entered judgment on its own. Whatever the cause, Trustee claims the court erred by failing to construe the facts most favorably against Auctioneer.
Although the document auctioneer filed was entitled "Response to Plaintiff's Motion for Summary Judgment in Favor of Plaintiff on Plaintiff's Complaint," it requested entry of summary judgment or claimed it was entitled thereto at six points in the body of its text.[16] We find this is sufficient to constitute a motion for summary judgment within the meaning of T.R. 56(C).[17]
When considering cross motions for summary judgment, the trial court must deal with each motion separately. Ebert v. Grain Dealers Mutual Insurance Co., (1973) 158 Ind. App. 379, 303 N.E.2d 693; Apple v. Apple, (1971) 149 Ind. App. 529, 274 N.E.2d 402. The court must construe the facts most favorably against the non-moving party. Suyemasa v. Myers, (1981) Ind. App., 420 N.E.2d 1334; French v. Hickman Moving and Storage, (1980) Ind. App., 400 N.E.2d 1384. Furthermore, a moving party "concedes and affirms that there is no issue of fact only for purposes of his own motion." Fischer v. Kaylor, (1969) 145 Ind. App. 148, 250 N.E.2d 19 citing 3 Barron & Holtzoff, Federal Practice and Procedure § 1239, pages 176-77.
Trustee argues he was harmed by the trial court's failure to consider the motions separately and in construing the facts in favor of the Auctioneer. However, he cites us to only one instance where the facts were improperly construed, i.e., the notices to creditors had been sent by Auctioneer. This required a finding that Michael J. Doherty, the president of Garden & Turf Supply Corporation, was acting as the agent of Auctioneer when he sent the notices. However, Trustee argued, based on Doherty's own testimony in his deposition, Garden & Turf Supply Corporation sent the notices. The inference from this testimony is Doherty was not acting as the Auctioneer's agent and therefore Auctioneer arguably did not satisfy its statutory duty.[18]
This was harmless error. As discussed above, the capacity of the person who mailed the notices is not critical. The key fact is the notice was actually sent, not who sent it.

*720 VII. FAILURE TO DECIDE ISSUES
Trustee argues the trial court erroneously failed to decide certain issues, prior to the entry of summary judgment in favor of Auctioneer, which he claims were necessary to its decision. Basically he argues the court failed to decide whether Michael J. Doherty, the president, chairman of the board and chief operating officer of the corporation, could properly act as the agent of Auctioneer.
We disagree. The court decided this issue when it held:
As a matter of law, the Court finds that the auctioneers had the authority to appoint an agent. Indiana recognizes the special agency relationship and other jurisdictions have applied this agency relationship specifically to auctioneers. In Indiana, it is established that special agents may be appointed for specific purposes. Doherty was authorized to sign the auctioneer's signature on the Notices. Therefore, Doherty acted within the scope of his authority which in turn would function as if the auctioneer himself had signed the Notices.
This finding was made in spite of Doherty's substantial managerial role in the corporation. We find no failure to decide a necessary issue.

VIII. FAILURE TO MAKE FINDINGS
Lastly, Trustee argues the trial court made incomplete and inaccurate findings of fact. It is well settled in Indiana that the trial court's findings need not be complete unless required by some provision of T.R. 52. Jay Clutter Custom Digging v. English, (1979) Ind. App., 393 N.E.2d 230. No sections of that rule apply here. Therefore, the trial court did not err when it entered incomplete findings.
Of the items Trustee argues were inaccurate, only two merit discussion. First, he argues the court was incorrect in finding Kelly Strange was "in charge" of this auction. While there is evidence he received the list of creditors and authorized Michael J. Doherty to send the notices to creditors, there is no evidence he attended the auction or helped prepare the auction ticket slips. Yet, we cannot say this finding was clearly erroneous under T.R. 52(A).
However, another finding made by the court is incorrect. It held the notice to creditors identified the auctioneer. As discussed previously, the auctioneer contracting to conduct the auction was Midwest Liquidators, Inc., not Kelly Strange d/b/a Midwest Liquidators. The notice contained a misstatement as to the identity of the auctioneer and the court's finding otherwise was erroneous. However, as discussed above, this misstatement was harmless. There is no reversible error.
Judgment affirmed.
YOUNG, P.J., and SHIELDS, J., sitting by designation, concur.
NOTES
[1] The issues have been consolidated and renumbered for clarity.
[2] Ind. Code 26-1-6-101 et seq.
[3] The trial court granted summary judgment only against Trustee's complaint. It denied summary judgment against the Auctioneer's counterclaim.
[4] IC XX-X-X-XXX et seq.
[5] See U.C.C. § 6-108.
[6] The Trustee argues not all creditors received notice. However, all creditors known to the Auctioneer and listed on the sworn list of creditors received notice. This satisfies the Act.
[7] IC XX-X-X-XXX provides:

Sec. 107. (1) A bulk transfer is subject to this Article even though it is by sale at auction, but only in the manner and with the results stated in this section.
(2) The transferor shall furnish a list of his creditors and assist in the preparation of a schedule of the property to be sold, both prepared as before stated (section 6-104).
(3) The person or persons other than the transferor who direct, control or are responsible for the auction are collectively called the "auctioneer". The auctioneer shall
(a) receive and retain the list of creditors and prepare and retain the schedule of property for the period stated in this Article (section 6-104);
(b) give notice of the auction personally or by registered mail at least ten (10) days before it occurs to all persons shown on the list of creditors and to all other persons who are known to him to hold or assert claims against the transferor.
(4) Failure of the auctioneer to perform any of these duties does not affect the validity of the sale or the title of the purchasers, but if the auctioneer knows that the auction constitutes a bulk transfer such failure renders the auctioneer liable to the creditors of the transferor as a class for the sums owing to them from the transferor up to but not exceeding the net proceeds of the auction. If the auctioneer consists of several persons their liability is joint and several.
[8] See IC Bender's U.C.C. Serv. (MB) § 22.12[1] n. 185 (1982). See also 3A Bender's U.C.C. Serv. (MB) § 15.05[2] (1982); 5 Bender's U.C.C. Serv. (MB) § 67.05[1] (1982).
[9] See 3A Bender's U.C.C. Serv. (MB) § 15.05[2] (1982); 5 Bender's U.C.C. Serv. (MB) § 67.05[1] (1982); Levit, Bulk Transfers  Stepchild of the Uniform Commercial Code?, 46 Notre Dame Law. 694 (1971); 3 Law Revision Commission, State of New York Study of Uniform Commercial Code, Leg.Doc. 65(G), 1721, 1752 (1955).
[10] For verbatim statement of IC XX-X-X-XXX(3), see note 8, supra.
[11] Any creditor not named on the list, who did not receive notice and was not paid completely, does not have a cause of action against the Auctioneer under this statute. IC XX-X-X-XXX(4).
[12] Section 6-104 requires the transferee to preserve the schedule of property for six months after the transfer.
[13] Regarding the sufficiency of schedules of property, the New York Law Revision Commission stated:

Subsection [6-104](1)(b) requires that "the parties prepare" a schedule of the property transferred, "sufficient to identify it". This provision, with its "sufficient to identify" test is far more flexible than the current requirement that the transferor "make and deliver to the purchaser, transferee or assignee a full and detailed inventory, showing the quantity and, so far as possible with the exercise of reasonable diligence, the cost price to the seller, transferor or assignor of each article to be included in the sale". (Personal Property Law, § 44. See also Lien Law, § 230-a.) Note that under the Code "the parties prepare" it, while under present law the responsibility is apparently upon the seller. Note also that this list, under present law, must be delivered to the purchaser "at least ten days before the sale." Under the Code there is no such time requirement, although it would seem that in order to satisfy Sections 6-105 and 6-107 [IC XX-X-X-XXX and 106], both the list of creditors and the inventory schedule would have to be delivered at least ten days before the sale.
3 Law Revision Commission, State of New York, Study of Uniform Commercial Code, Leg. Doc. 65(G), 1721, 1747 (1955).
[14] In his brief, the Trustee did not argue against the propriety of paragraphs 9 and 12, so any error there is waived. As to paragraph 2, in the trial court, Trustee's counsel stated, "Secondly, I think maybe he snuck in a conclusion of law there on paragraph 2, but I'll let that go by." This constituted a waiver of any error.
[15] In the trial court's Entry for Summary Judgment on Plaintiff's Complaint, at 1, the court stated, "Based upon unrebutted evidence contained in ... the Affidavit of Kelly Strange, ... the Court makes the following findings of fact."
[16] Furthermore, the trial court in its decision stated it was entering judgment on the "Defendants' Motion for Summary Judgment... ."
[17] While the form of this response constitutes a motion for summary judgment, it failed to be served to the opposing party at least ten days before the hearing as required by the trial rule. The motion was filed on March 24, 1980, and the hearing was held on April 2, 1980. However, this issue was not raised by either party and therefore is waived.
[18] Also, Auctioneer argues Trustee admitted the existence of an agency relationship in its memorandum. However, Trustee only assumed this to be true for purposes of his motion and the court could not rely on that assumption when ruling on Auctioneer's motion.