LIBERTY MUTUAL INSURANCE COMPANY, Appellant, Garnishee Defendant Below,

v.

Kenneth W. METZLER, Appellee, Judgment Defendant Below,

v.

Thomas POWELL and Margaret Powell, Appellees, Plaintiffs Below.

No. 49A05–9101–CV–18.

Court of Appeals of Indiana, Fifth District.

Feb. 18, 1992.

Paul J. Knapp, Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellant.

Peter G. Tamulonis, Donald L. Dawson, Jeffrey A. Doty, Kightlinger & Gray, Indianapolis, for appellees.

RUCKER, Judge.

This is an appeal from an adverse ruling on cross motions for summary judgment. The trial court determined that Liberty Mutual Insurance Company (Liberty Mutual) was liable to pay a judgment received by Thomas and Margaret Powell (the Powells) against Kenneth Metzler. Metzler had caused injury to the Powells through his operation of a motor vehicle owned by Liberty Mutual's insured. On appeal, Liberty Mutual contends the trial court erred in granting summary judgment in favor of the Powells and denying its own motion for summary judgment. We rephrase the issues as follows:

1. Is Liberty Mutual collaterally estopped from litigating whether Metzler intentionally caused injury to the Powells?

2. Does Metzler's prior criminal conviction, which established he acted intentionally in causing injury to the Powells, collaterally estop the Powells from litigating in a civil action whether Metzler's conduct constituted negligence?

3. Is there a genuine issue of material fact whether Metzler was an insured within the meaning of Liberty Mutual's various policies of insurance?

We reverse.

Metzler was a truck driver for National Freight, Inc. On February 21, 1987, he was assigned to carry a load of freight from Louisville, Kentucky to New Stanton, Pennsylvania. Metzler deviated from his route and made a stop at the Benchwarmer Pub located in Indianapolis, Indiana where he became engaged in an argument with his girlfriend. Metzler was ejected from the establishment and shortly returned in his semi-tractor and drove it into the Pub. One person was killed and 18 others were injured including the Powells.

Metzler was ultimately convicted of one (1) count of Murder; eighteen (18) counts of Attempted Murder; seven (7) counts of Battery; one (1) count of Operating a Vehicle With Over .10% Alcohol in Blood Resulting in Death; and six (6) counts of Operating a Vehicle With .10% Alcohol in Blood, Resulting in Serious Bodily Injury.

*Metzler v. State* (1989), Ind., 540 N.E.2d 606. On appeal, Metzler claimed the evidence did not show he was acting with the requisite intent to commit the crimes charged. Our supreme court rejected Metzler's argument, affirmed the convictions, and indicated the evidence showed Metzler intended the consequences of his act. *Id.*

Shortly, thereafter, the Powells filed a complaint against Metzler seeking compensatory and punitive damages for their injuries which were alleged to have been either negligently or intentionally caused. The Powells later amended their complaint and alleged negligence as their sole theory of recovery. Metzler was served with the complaint and summons but did not respond and default judgment was entered against him. A hearing was held on the issue of damages, and the trial court entered judgment in favor of Margaret Powell in the amount of $1,600,000.00, and in favor of Thomas Powell in the amount of $150,000.00.

The Powells then commenced proceedings supplemental to execution naming as garnishee defendant Liberty Mutual, the insurer for National Freight, Inc. In response Liberty Mutual filed its Answer, Affirmative Defenses and Counterclaim. The Counterclaim sought a declaratory judgment that Liberty Mutual's policies of insurance issued to National Freight did not afford coverage for Metzler's conduct.

The parties to this action then filed cross-motions for summary judgment. The trial court granted summary judgment in favor of the Powells holding they were entitled to recover from Liberty Mutual the amount of their judgment against Metzler. Liberty Mutual timely filed a motion to correct errors which was denied. This appeal ensued. Additional facts will be recited where relevant.

The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Chambers v. American Trans Air, Inc.* (1991), Ind.App. 577 N.E.2d 612. When

reviewing the grant of a summary judgment motion our standard of review is the same standard that is used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Farm Bureau Co-op. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, *reh. denied.* All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *ITT Com. Finance v. Union Bank and Trust* (1988), Ind.App., 528 N.E.2d 1149. However, when a motion for summary judgment is made and supported by the materials contemplated by Trial Rule 56, the opposing party may not rest on his pleadings, but must set forth specific facts, using supporting materials contemplated by this rule. *Id.* If the opposing party fails to meet this burden, summary judgment may be granted.

### I.

The semi-tractor that Metzler operated was insured by Liberty Mutual under three different policies of insurance: a Trucker's Policy, a Business Policy, and an Umbrella Policy. Liberty Mutual contends Metzler is not covered under any of the policies because Metzler's conduct which gave rise to the Powells' claim was intentional and thereby specifically excluded. In support of its argument, Liberty Mutual directs our attention to Metzler's criminal conviction, and our supreme court's ruling that Metzler acted intentionally. The Powells counter that the question of whether Metzler's conduct was intentional or negligent has already been determined in the underlying tort action. The Powells therefore argue that Liberty Mutual is collaterally estopped from attempting to raise the issue for the first time at the proceedings supplemental stage of this lawsuit.[1] We agree.

Collateral estoppel, a branch of res judicata and characterized as "issue preclusion," involves a prior adjudication of a particular issue which is binding on the parties and their privies in a later lawsuit. *Rees v. Heyser* (1980), Ind.App., 404 N.E.2d 1183. The doctrine of collateral estoppel applies to insurance contracts and an insurer is ordinarily bound by the result of litigation to which its insured is a party, so long as the insurer had notice and the opportunity to control the proceedings. *Hoosier Casualty Co. v. Miers* (1940), 217 Ind. 400, 27 N.E.2d 342, *Snodgrass v. Baize* (1980), Ind.App., 405 N.E.2d 48, *reh. denied.*

In the case before us, there is no dispute that Liberty Mutual had notice of the underlying tort complaint filed against Metzler, its insured. However, Liberty Mutual did not undertake Metzler's defense or otherwise act to protect its own interest in the outcome of the litigation. Liberty Mutual, nevertheless, argues that the doctrine of collateral estoppel is not applicable here because it had the right not to defend or intervene in the underlying lawsuit once its own independent investigation revealed there was no coverage under the various policies. Liberty Mutual concludes that the proceedings supplemental stage of this litigation was its first opportunity to assert

---

1. The Powells also argue that proof of "intent" which will support a criminal conviction is not the same in determining whether coverage is excluded under the intentional acts provision in a policy of insurance. The Powells contend the State of Indiana, in prosecuting Metzler, relied on the doctrine of "transferred intent," which allowed the prosecutor to prove intent with evidence Metzler intended to kill *someone*. *See Norris v. State* (1981), 275 Ind. 608, 419 N.E.2d 129, 133. The Powells argue the doctrine of transferred intent is not available in a civil action involving matters of insurance coverage because in order for an exclusion to apply, there must be a showing that the insured intended harm to the person actually injured. *Indiana*

*Lumbermens Mut. Ins. Co. v. Brandum* (1981), Ind.App., 419 N.E.2d 246. The Powells conclude that the determination of criminal intent underlying Metzler's conviction has no bearing on the case before us.

Because we conclude Liberty Mutual is collaterally estopped from relitigating the issue of whether Metzler acted negligently or intentionally in causing injury to the Powells, we need not address the merits of what effect, if any, Metzler's criminal conviction has on the intentional acts exclusion of Liberty Mutual's policy of insurance. *See Omni Micro v. Hyundai Electronics America* (1991), Ind.App., 571 N.E.2d 598 (summary judgment may be affirmed on any theory or basis found in the record).

policy defenses and therefore it cannot now be estopped from so doing.

We have no quarrel with Liberty Mutual's assertion of a right not to defend Metzler. The law in this jurisdiction is well settled that where an insurer's independent investigation of the facts underlying a complaint against its insured reveals a claim patently outside of the risks covered by the policy, the insurer may properly refuse to defend. *Cincinnati Ins. Co. v. Mallon* (1980), Ind.App. 409 N.E.2d 1100; *American States Insurance Co. v. Aetna Life & Casualty Co.* (1978), 177 Ind.App. 299, 379 N.E.2d 510; *United States Fidelity and Guar. Co. v. Baugh* (1970), 146 Ind.App. 583, 257 N.E.2d 699. However, the foregoing authority does not hold that an insurer's exercise of its right not to defend its insured will operate to bar collateral estoppel. To the contrary, it is clear that an insurer may refuse to defend its insured, but at its own peril. *Mallon, supra.*

Liberty Mutual bolsters its argument by pointing to the conflict of interest between itself and Metzler on the underlying claim as precluding collateral estoppel. It is the position of Liberty Mutual that it could not possibly have defended Metzler against the Powell's claim and at the same time challenged his conduct as being intentional. Citing to *Farm Bureau Mut. Auto. Ins. Co. v. Hammer* (4th Cir.1949), 177 F.2d 793, *cert. denied* (1950), 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339, Liberty Mutual contends the rationale underlying the doctrine of collateral estoppel, "to obviate the delay and expense of two trials upon the issue," *id.* at 799, breaks down in the face of an insurer/insured relationship where the two interests are adverse. Liberty Mutual argues that because of the conflict of interest between Metzler and itself, it has never had its day in court and therefore it should not be bound by the result of the underlying claim in this case. We disagree.

The question of whether the doctrine of collateral estoppel falls in the face of a claim of conflict of interest was squarely faced in *State Farm Mut. Auto. Ins. Co. v. Glasgow* (1985), Ind.App., 478 N.E.2d 918, *reh. denied.* In that case, Glasgow filed a complaint against Weist in small claims court seeking recovery for damages to her automobile. Glasgow's complaint did not indicate a theory of recovery. Defendant Weist was insured by State Farm, who declined to defend claiming that Weist had intentionally driven his own car into Glasgow's car and therefore the damages were not covered by the policy. At the conclusion of the small-claims trial, the trial judge entered judgment in favor of Glasgow and against Weist. The trial court's entry did not mention the basis of recovery. Glasgow then filed for proceedings supplemental to execution of the judgment, seeking recovery from State Farm as Weist's insurer. The trial court determined State Farm was liable to Glasgow on its policy issued to Weist. State Farm appealed and one of the issues raised was whether State Farm was collaterally estopped from litigating the issue of whether Weist acted negligently or intentionally in causing Glasgow's damages.

As does Liberty Mutual in this case, State Farm argued in *Glasgow* that collateral estoppel did not apply because of the conflict of interest between insurer and insured. We disagreed and determined there are two instances in which the doctrine of collateral estoppel would not prevent an insurer from challenging a determination made in the prior action: (1) where the insurer defends the insured under a reservation of rights in the underlying tort action, or (2) where the insurer files a declaratory judgment action prior to the entry of judgment in the underlying tort action. *Id.* Because State Farm did neither, collateral estoppel was not precluded on the grounds of conflict of interest. *Id.*

In the case before us, Liberty Mutual did not act to defend Metzler in the Powells' negligence action; nor, did Liberty Mutual seek to obtain declaratory judgment before judgment was entered against Metzler. Therefore, Liberty Mutual is collaterally estopped from now raising the issue that Metzler's alleged intentional acts bars coverage under the policies of insurance. In *Glasgow* we did ultimately determine that

collateral estoppel was precluded because the notice in the small claims action did not state a theory of recovery and the trial court's order book entry did not include a finding of negligence. On those facts the insurer was not barred from raising the intentional acts exclusion to coverage. However, that exception is not applicable here because the Powells' amended complaint is clearly founded on the theory of negligence.

Liberty Mutual recognizes the impact of *Glasgow* but insists that the inconsistency with *Mallon, supra* and *Baugh, supra* must be reconciled so as to preclude collateral estoppel in this case. Both cases affirm the insurer's right to look beyond the face of the complaint, conduct its own investigation and refuse to defend based upon the factual underpinnings of the claim. The rationale for this principle is to avoid "fraud perpetrated upon the insurer in that allegations of the complaint could be intentionally framed to force the insurer to appear and defend." *Baugh*, 257 N.E.2d at 709. According to Liberty Mutual, "if [it] were forced to defend Metzler simply because the Powells stated a negligence allegation in their complaint against Metzler, the rule of *Baugh* and *Mallon* would have no meaning." *Brief of Appellant*, p. 19.

 Liberty Mutual overstates its case. An insurer, after making an independent determination that it has no duty to defend, must protect its interest by either filing a declaratory judgment action for a judicial determination of its obligations under the policy or hire independent counsel and defend its insured under a reservation of rights. *See Glasgow, supra; Snodgrass, supra.* As we have indicated, "[An insurer] can refuse to defend or clarify its obligation by means of a declaratory judgment action. If it refuses to defend it does so at its peril...." *Mallon*, 409 N.E.2d at 1105, citing 7C Appleman, *Insurance Law & Practice*, § 4683 at 53. Both controlling precedent and sound policy dictate that we reject the perspective advanced by Liberty Mutual. An insurer, having knowledge its insured has been sued, may not close its eyes to the underlying litigation, force the insured to face the risk of that litigation without the benefit of knowing whether the insurer intends to defend or to deny coverage, and then raise policy defenses for the first time after judgment has been entered against the insured.

Relying on Metzler's criminal conviction, Liberty Mutual concluded that it had no duty to defend Metzler against the Powell's negligence complaint. Liberty Mutual did not protect its interest by filing a declaratory judgment action for a judicial determination of its obligation under the policy of insurance, nor did it defend Metzler under a reservation of rights. Liberty Mutual must now suffer the peril of its unilateral decision, namely: it is collaterally estopped from challenging whether Metzler acted negligently or intentionally in causing the Powell's damages. In the underlying tort action, the trial court determined Metzler acted negligently. The issue is closed. *Glasgow* is controlling here and Liberty Mutual may not avoid summary judgment in favor of the Powells on the theory that collateral estoppel is inapplicable to the facts of this case.

## II.

 Liberty Mutual further contends it is the Powells and not Liberty Mutual whom should be collaterally estopped from relitigating the question of whether Metzler acted negligently or intentionally. According to Liberty Mutual, our supreme court, in affirming Metzler's criminal conviction, conclusively determined that Metzler acted intentionally and therefore the Powells are collaterally estopped from claiming otherwise. In support of its contention Liberty Mutual cites several cases from foreign jurisdictions which stand for the proposition that an insured who has been convicted of a crime which would preclude coverage under an insurance policy is collaterally estopped from relitigating those issues in a coverage dispute. *Aetna Casualty & Surety Company v. Niziolek* (1985), 395 Mass. 737, 481 N.E.2d 1356; *Lee v. Knight* (1989), Okla., 771 P.2d 1003;

*Kowalski v. Gagne* (1st Cir.1990), 914 F.2d 299.

██ Liberty Mutual's argument must fail. The law in this state, unlike the law in other jurisdictions, does not permit the use of a criminal conviction as evidence in a civil action except on very limited grounds not relevant here. In *Brooks v. State* (1973), 259 Ind. 678, 291 N.E.2d 559, our supreme court unequivocally concluded:

> [W]hile there are exceptions and even some trend to the contrary indicated in some jurisdictions, Indiana follows the traditional rule that a judgment of conviction in a criminal prosecution is not admissible in a civil case, as evidence of the facts upon which it was based.

*Id.* at 259 Ind. at 680, 291 N.E.2d at 560. More recently this court, partly in reliance on *Brooks*, reversed an entry of judgment in favor of an insurer on facts which are particularly analogous to the case before us.

In *Hawkins v. Auto–Owners (Mut.) Ins. Co.* (1991), Ind.App., 579 N.E.2d 118, Robert Stephens, who was insured by Auto–Owners, shot Keith Lewis. Stephens was subsequently convicted of attempted murder, and his conviction was affirmed on appeal by our supreme court. Ruth Hawkins, as Lewis' guardian, brought suit against Stephens alleging Stephens negligently shot Lewis. While that tort action was pending, Auto–Owners brought a declaratory judgment action in another court seeking to establish that Stephens had intentionally shot Lewis and that Auto–Owners was therefore not liable for Lewis' injuries under Stephens' insurance policy with Auto–Owners which excluded any bodily injury or property damage caused by the insured's intentional act.

The trial court considered the transcript of Stephens' criminal trial and concluded that Stephens had intentionally shot Lewis. The trial court then entered a judgment on the merits in favor of Auto–Owners. On appeal this court held:

> There is a general rule that the records of proceedings in criminal actions are not admissible in civil actions as proof of the facts upon which a party was convicted. This is particularly true when the civil action is for damages occasioned by the offense for which the party was convicted.

*Id.* at 121 citing *Brooks, supra; Montgomery v. Crum* (1928), 199 Ind. 660, 161 N.E. 251; *Hambey v. Hill* (1971), 148 Ind.App. 662, 269 N.E.2d 394, *trans. denied.* The rule that proof of conviction after a criminal trial is inadmissible in a subsequent civil action is founded on the principle that such proof is based upon hearsay or upon the opinion of another trier of fact. *Hawkins*, 579 N.E.2d at 122.

In the case before us, the fact of Metzler's criminal conviction is inadmissible in any subsequent civil action as evidence Metzler acted intentionally rather than negligently. Thus, contrary to Liberty Mutual's position, the Powells are not collaterally estopped from complaining that their damages resulted from Metzler's negligent conduct.

### III.

██ Liberty Mutual next contends the trial court erred in entering summary judgment in favor of the Powells because there is a dispute of material fact as to whether Metzler was an "insured" within the meaning of its insurance policies.[2]

Each of Liberty Mutual's insurance policies afforded coverage to any "insured" as defined in the omnibus clause. Each of the clauses, in turn, included in its definition of an "insured," any person using a vehicle covered by the policy with National Freight's permission.

---

2. Liberty Mutual is not estopped from defending against coverage on the grounds that Metzler is not a named insured. The estoppel created by the judgment in the Powells' tort action cannot be extended beyond the issues determined by the judgement. *Hoosier Casualty Co. v. Miers, supra; In re Marriage of Moser* (1984), Ind.App., 469 N.E.2d 762. In the underlying claim, the trial court determined the Powells' injuries were caused by Metzler's negligence, but did not address whether Metzler was an "insured" within the meaning of Liberty Mutual's various policies of insurance with National Freight.

Liberty Mutual argues that Metzler's permission to drive the vehicle was subject to certain restrictions, namely: Metzler was required to follow a specific scheduled, established route and required to park the vehicle at a National Freight Terminal. According to Liberty Mutual, Metzler violated these restrictions by leaving his scheduled route for personal reasons. Therefore, his permission to drive the truck terminated and as a result Metzler was not an insured within the meaning of the policies of insurance.

▬ Indiana follows the "liberal rule" in determining whether an employee who uses his employer's motor vehicle with the latter's permission remains within the protection of the omnibus clause of an insurance policy when he deviates from the purpose and use for which permission was granted. The liberal rule provides that the initial permission encompasses any use by the employee even though that use was not contemplated by the employer when permission was first given. *Hartford Ins. Co. v. Vernon Fire & Casualty Ins.* (1985), Ind.App., 485 N.E.2d 902, *trans. denied; State Farm Fire & Casualty Co. v. White* (1976), 168 Ind.App. 118, 341 N.E.2d 782, *trans. denied; Arnold v. State Farm Mut. Auto. Ins. Co.* (7th Cir.1958), 260 F.2d 161.

▬ However, the liberal rule is subject to certain limitations. It does not apply for example where the operator is expressly forbidden from allowing another to use the vehicle. *Hartford, supra,* citing *Arnold, supra.* Nor, does the rule apply where the operator is expressly prohibited from making personal use of the vehicle, or expressly prohibited from driving the vehicle other than to and from work. *Michael v. Indiana Ins. Co.* (1984), Ind.App., 469 N.E.2d 1222. Under such circumstances the focus is not on whether the operator deviated from a use contemplated by the employer, rather the determinative question is whether the operator's use of the vehicle was restricted in the first instance. Violations of use restrictions by a permissive user may terminate the initial permission. *Arnold, supra.*

In the case before us Liberty Mutual presents the affidavit of David Williams, the Terminal Manager for National Freight, Inc. The affidavit states, in pertinent part:

8. During the time Metzler was employed by National Freight, its drivers were prohibited from taking a semi-tractor or trailer to their home or to any other destination other than one specifically designated by National Freight.

\* \* \* \* \* \*

10. During the time Kenneth Metzler was employed, National Freight employees were expressly prohibited from making personal use of any National Freight semi tractor or trailer, and were prohibited from using such vehicle for any purpose other than business of National Freight.

*Record* at 434–35. Liberty Mutual argues that in light of *Michael* and *Hartford,* the Williams Affidavit raises a material issue of fact which precludes summary judgment in favor of the Powells. The Powells respond that Liberty Mutual has failed to produce any evidence that National Freight imposed any express restrictions on Metzler and no issue of fact is created by the affidavit.

▬ When considering cross motions for summary judgment, the trial court must deal with each motion separately, construing the facts in favor of the non-moving party. *Matter of Garden & Turf Supply Corp.* (1982), Ind.App., 440 N.E.2d 710. On the issue now before us, Liberty Mutual is appealing from a grant of summary judgment. Thus it stands in the shoes of the nonmovant and any doubts as to an issue of material fact must be resolved in Liberty Mutual's favor. *Id.* The Williams Affidavit is not a model of clarity but it does raise the reasonable inference that Metzler was expressly prohibited from making personal use of the vehicle and also expressly prohibited from driving the vehicle other than to and from work. The trial court was presented with this dispute, but entered summary judgment despite an unresolved question of material fact. Ac-

cordingly, entry of summary judgment was error.

We reverse the trial court's judgment granting the Powells' motion for summary judgment and remand for further proceedings not inconsistent with this opinion. By the same token, we affirm the trial court's judgment denying Liberty Mutual's motion for summary judgment.

Judgment reversed.

SHARPNACK and BAKER, JJ., concur.