**AUTO OWNERS (MUTUAL) INSUR-
ANCE COMPANY, Plaintiff,**

v.

**Dick R. STANLEY, Richard A. Stanley,
and Ermal Wilson, Defendants.**

Civ. No. 3491.

United States District Court
N. D. Indiana,
South Bend Division.

Jan. 6, 1967.

George N. Beamer, Jr., of Crumpacker, May, Levy & Searer, South Bend, Ind., for plaintiff.

John E. Doran of Doran, Manion, Boynton & Kamm, South Bend, Ind., for defendants.

## ORDER

GRANT, Chief Judge.

The plaintiff insurance company (Auto Owners) brought this action seeking a determination of its rights under a policy of insurance issued to the D. L. Miller Auto Sales, a South Bend, Indiana automobile dealer. The case was tried to this Court sitting without a jury. After carefully considering all of the evidence and the applicable law, we are of the opinion that Auto Owners is bound by its policy to provide coverage to the defendant Richard A. Stanley.

On August 12, 1962 Auto Owners issued to the D. L. Miller Auto Sales a standard "Garage Liability Policy" indemnifying the agency against loss resulting from the operation of any of its automobiles, with qualifications not here relevant. This protection was extended under an omnibus clause to include "any person while using an automobile covered by this policy * * * provided the actual use of the automobile is with the permission of the named assured." On April 24, 1963 the defendant Richard A. Stanley secured permission from a Miller employee to test drive a used automobile on display at the car lot. While operating the automobile in the neighborhood Stanley was involved in an accident with the defendant Ermal Wilson, who sustained personal injuries. Wilson brought suit against Stanley to recover for his injuries. Stanley, in turn, looks to Auto Owners for a defense and indemnification under the Miller policy as a person who used the automobile "with the permission of" Miller Auto Sales. Auto Owners contends that no coverage is owed under the omnibus clause for the reason that Stanley obtained permission by false and fraudulent misrepresentations. This is the ultimate question presented for decision.

The evidence was that in April, 1963 Richard A. Stanley was a sixteen-year-old high school senior who possessed a temporary driver's permit. He wanted to have his own car, but his parents only allowed him the use of their second family automobile, an old Studebaker rarely in operable condition. They held out to him the prospect of buying him a used car, but on the condition that he pay for his own gas and insurance. Apparently under this motivation, but without the consent of his parents, Stanley visited used car lots in the area. On at least one occasion prior to the day in question he secured permission from an automobile salesman to test drive a used car that he represented he might purchase. On April 24, a regular school day, Stan-

ley was released at 2:45 P. M. He went home and changed from his school clothes to black suit, white shirt and black tie. He left the house carrying an empty brief case. He claims that he was going to apply for a job, but it is more consistent with his admission that the brief case was a "prop" to conclude that he was on his way to another used car lot.

Stanley was about six foot-one in height and heavyset. His size and neat appearance lend credibility to the fact that he looked older than his years. But a high school photograph taken that year, fully revealing his youth, shows that this false impression can be over-emphasized. He still looked like a very young man.

He came upon the D. L. Miller lot at approximately 3:20 P. M. John Foster, a Miller salesman, accepted Stanley as a prospective customer. Stanley told Foster his name, and said that he was a Notre Dame student looking for a second car for his wife. Foster, claiming to have "no reason to doubt it", and impressed by his appearance, questioned him no further but showed Stanley a number of automobiles in the one thousand dollar range. By this time Foster had merely inferred by what he saw and heard that Stanley was at least twenty-one.[1]

Stanley selected a white 1961 Ford Falcon with manual transmission and requested a demonstration ride. Because he was unfamiliar with the stick shift, Stanley was first driven around the block by Foster. He then took over, with Foster by his side. After a brief ride they returned to the Miller lot. Stanley represented that he wanted his mechanic to look the car over. Foster acquiesced, and allowed him to leave unaccompanied.[2] Stanley left the lot, drove for a while, picked up one of his friends, and shortly thereafter was involved in the collision with Ermal Wilson.

John Foster admitted that it was the policy of his agency not to allow a minor to test an automobile unless he was accompanied by his parent or other adult, qualified driver.[3] His conclusion that Stanley was not a minor was at best unreasonable speculation, since he failed to either look at his driver's license or even ask him his age. His better judgment was perhaps clouded by another Miller policy testified to by Foster, i. e., the promotion and sale of automobiles.[4]

Based upon this evidence the Court readily makes the following conclusions:

(1) Richard Stanley fully intended to deceive Foster into believing that he was a responsible and qualified driver.

(2) Stanley falsely represented that he was a Notre Dame student, that he was married and that he intended to show the car to a mechanic. He in fact only wanted to take the car for a spin.

1. "Q Did you have occasion at that point to form an estimate or opinion as to Richard Stanley's age?
"A Yes.
"Q What was the opinion that you formed?
"A I formed the opinion that he was approximately the age he told me that he would be if he were a married college student, *which would be twenty-one, twenty-two; in this range.*"

2. "Q You didn't go along with him then when he said he was going to take the car to a mechanic?
"A No, it generally—this type of thing takes forty-five minutes to an hour for a mechanic to look over a car, and as you well know, you can use your day better than standing around talking to a mechanic about an automobile."

3. Foster admitted that once before he had allowed a minor to drive alone, and after a joy ride, the car was wrecked. He was thus well-acquainted with this policy.

4. "Q When a customer presents himself to your lot your prime concern, Mr. Foster, is whether or not he is in the market for an automobile, isn't that correct?
"A That is.
"Q And if he is in the market, you are interested in selling him one, aren't you?
"A Yes, sir.
"Q And if he wants to use one of your cars to try it out and see if it is the type of car he wants, you like to let him use it, don't you?
"A We try to."

4

(3) John Foster placed unreasonable reliance upon those representations which were made to him.

■ These facts and conclusions must now be interpreted within the framework of the applicable Indiana law. The omnibus clause provides that third parties who use the insured automobile "with the permission of" the named insured are included in the policy coverage. Plaintiff's position is that where the initial permission for use of the automobile is obtained by fraud and deceit, then there is no permission for such use within the meaning of that clause in the policy. Indiana has no law on the precise question of the scope of initial permission under an omnibus clause. Thus we must decide it as we believe the highest court of the State would rule, were it presented with this factual situation.

■■ Auto Owners relies on the well-established principle of Indiana law that fraud vitiates consent, or in this case, the permission given. Deahring v. State, 226 Ind. 273, 79 N.E.2d 535 (1948). But fraud to be cognizable in the law must consist of a number of essential elements: (1) representations of material facts; (2) reliance thereon; (3) falsity of the representations; (4) knowledge of the falsity; (5) deception of the defrauded party; (6) injury. Automobile Underwriters, Inc. v. Smith, 131 Ind. App. 454, 166 N.E.2d 341, (1960). The factual findings in this case clearly show that at least two of these prerequisites are not present. The representations were not material; and the insured's authorized employee, Foster, did not reasonably rely on the representations that were made.

■ The representations were not material. According to the policy of the Miller agency, Foster was authorized to release automobiles for test drives by unattended customers only where the customer was a qualified driver over twenty-one years of age. It was Foster's testimony that, had he known Stanley was under twenty-one, he would not have given his permission. But Stanley only represented to him that he was a married Notre Dame student. These statements might enhance Stanley's respectability, but they bear no reasonable relation to the magic age of twenty-one. Even when his entire course of conduct is considered in a light most favorable to Foster, it cannot be said that Stanley presented the appearance of an adult. It would have been material for Stanley to affirm that he was twenty-one, or to show identification misrepresenting his age. But he did neither, and the flimsy scheme that he did employ was not remotely determinative of that central fact.

■■ More important to this case is the conduct of Foster. He is bound to make reasonable inquiry into the truth or falsity of the representations made. Indiana has long adhered to that requirement:

"It is a fundamental principle that a man is bound to use ordinary care and diligence to guard against fraud and imposition, and that, if he fails to do so, he cannot obtain relief from the courts." Wood v. Wack, 31 Ind. App. 252, 67 N.E. 562, 564 (1903).

Clearly Foster failed in his responsibility. Initially, he made the absurd judgment that Stanley, a married Notre Dame student, was twenty-one, or twenty-two, and thereby automatically excluded the possibility that he might be a married Notre Dame student of twenty, or nineteen, or even eighteen. This was obviously a judgment of convenience, for Foster made no attempt to satisfy himself of Stanley's true age by the most ordinary, simple and traditional means —a look at his driver's license. Surely this is a minimal obligation to impose upon a man whose primary concern is the sale of an automobile, and who thus may be tempted to forego the usual formalities in the interests of a profitable purchase. Indeed, the car salesman who encourages total strangers to drive automobiles about the streets to promote a sale can be held to a higher standard of care, as a risk of their business. In any event, Foster failed to take the obvious precaution, and as a consequence

has no standing to claim that his express permission was vitiated by the misrepresentations made by Stanley.

■ ■ This case ultimately requires the interpretation of an insurance contract. To date the omnibus clause has been liberally construed in favor of protection for the permittee, who in this case is Richard Stanley. The Seventh Circuit has so concluded under Indiana law. In a case where the permittee secured initial permission for the use of an automobile, and then materially deviated from the permissible scope of operation, that Court interpreted the omnibus clause and held that "any use while [the automobile] remains in his possession is 'with permission' though that use may be for a purpose not contemplated by the assured when he parted with possession of the vehicle." Arnold v. State Farm Mutual Auto. Ins. Co., 260 F.2d 161 (7th Cir. 1958). The same result has been reached when the permittee, without express permission, loans the car to a second permittee. State Farm Mutual Auto. Ins. Co. v. Automobile Underwriters, Inc., 255 F.Supp. 404 (S.D.Ind.1966). Both cases were concerned with the use of the automobile after initial permission was obtained. The instant case faces squarely the nature of the initial permission itself. We conclude that where the insured voluntarily extends permission to a third party for the use of his vehicle, the initial permission required by the omnibus clause of his insurance policy may be found to exist, even though the permittee secured that permission by misrepresentations, if (1) the misrepresentations were immaterial to the actual possession of the vehicle, or (2) the insured failed to make reasonable inquiry into those misrepresentations which were material. Under that test the plaintiff, Auto Owners, has failed to show that initial permission was lacking.

■ This decision, based as it is upon ordinary legal principles, falls well within the scope of established Indiana

policy. Ultimately, the person who suffers on account of careless entrustment of automobiles is the third party injured by a financially irresponsible permittee. The burden placed upon the permittor-insured to exercise reasonable discretion in the selection of drivers at the expense of coverage under his insurance policy, is insignificant in comparison. If he extends permission indiscriminately, neither he nor his insurer may seek to withdraw protection by narrowly construing the omnibus clause. It is widely recognized that the public represents an anonymous third party to the insurance contract, having a clearly definable interest in its interpretation. This is made explicit in regard to the omnibus clause, which is required by law to be included in every policy of insurance issued in the State of Indiana. Burns' Ind. Stat.Ann. § 39–4309. In construing the statute along with the insurance policy, it clearly appears that the omnibus clause is included for the benefit of the public. That same policy has been recognized repeatedly. Jurd v. Pacific Indemnity Co., 57 Cal.2d 699, 21 Cal.Rptr. 793, 371 P.2d 569 (1962); Storm v. Nationwide Mut. Ins. Co., 199 Va. 130, 97 S.E.2d 759, 69 A.L.R.2d 849 (1957); Pavelski v. Rogniski, 1 Wis.2d 345, 84 N.W.2d 84 (1955). The public is protected only when the insurer is bound by the failure of its insured to make a reasonable effort to become acquainted with the risks of loaning out automobiles to others.

The plaintiff relies on two Minnesota cases, Liberty Mutual Ins. Co. v. Stilson, 34 F.Supp. 885 (D.Minn.1940) and Roehrich v. Holt Motor Co., 201 Minn. 586, 277 N.W. 274 (1938), but the Court does not consider them persuasive authorities.

In accordance with the above opinion it is ordered that the plaintiff's petition for declaratory relief be, and the same hereby is, denied. The Court does now declare that the plaintiff owes coverage and defense according to the terms of its insurance contract to the defendant Richard A. Stanley.