Bonnie MICHAEL, Defendant-Appellant,

v.

INDIANA INSURANCE COMPANY, Plaintiff-Appellee.

No. 1–1283A386.

Court of Appeals of Indiana,
First District.

Oct. 31, 1984.

Rehearing Denied Dec. 13, 1984.

Dean E. Richards, Richards Caress Vargo Light & Brown, Indianapolis, for defendant-appellant.

Loren J. Comstock, Indianapolis, for Alamander Rudell Adams.

James R. Earnshaw, Crawfordsville, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Bonnie Michael appeals from the entry of a declaratory judgment finding Indiana Insurance Company not liable under an insurance policy issued to the City of Crawfordsville.

We affirm.

## FACTS

The facts most favorable to the trial court's judgment show that on February 5, 1978 Bonnie Michael sustained serious injuries when her vehicle collided head-on with a truck owned by the City of Crawfordsville and being driven by Alamander Rudell Adams. Shortly after the collision, a criminal action was filed against Adams charging him with criminal recklessness. The criminal action went to trial prior to this civil action and members of Bonnie Michael's family testified during that proceeding. This testimony tended to prove Adams, who had been romantically involved with Mrs. Michael, intentionally drove his vehicle into hers because of differences which arose in their relationship. Indiana Insurance admitted this prior testimony into evidence at the declaratory judgment trial because by showing Adams acted intentionally it could avoid liability pursuant to the insurance policy issued to the City of Crawfordsville, the truck's owner.

Bonnie Michael and Adams had dated for quite some time. It is uncontroverted that the two argued often. Pam Dale, Bonnie's sister, testified at the criminal trial that Adams had threatened to kill Bonnie in the past and heard the same threat on February 4, 1978, the day before the collision. Pam also stated Adams had beaten Bonnie in the past. Record at 728. Paul Michael, Bonnie's son, substantially corroborated this testimony and stated he had talked with Adams on the day of the collision and Adams reiterated his threat to kill Bonnie. Record at 557, 728. Both Pam and Paul stated Adams had been drinking when he spoke with them. Record at 728.

Pam was also an eyewitness and during the criminal trial testified to the facts surrounding the incident. She was in a car travelling southbound on highway 47 toward Crawfordsville when she saw Adams, driving the city truck, approaching in the northbound lane. Bonnie was travelling in the same direction as Pam but some distance behind her. After passing by Pam, Adams continued toward Bonnie and swerved into the southbound lane. Bonnie attempted to avoid the collision by veering into the northbound lane but Adams also veered his vehicle and the two met near the middle of the highway in a head-on crash.

At the time of the crash, the roads were wet but neither ice nor snow was present. Adams gave a statement to the police, after the accident, and conceded the road conditions were clear and that he had no

trouble seeing any other cars. Record at 610. Furthermore, in a letter dated March 2, 1978 Bonnie and her attorney stated that her injuries were proximately caused by the intentional acts of Adams. Record at 368.

After hearing testimony during the declaratory judgment action and considering the transcribed testimony of witnesses from the criminal trial, the judge entered findings of fact and conclusions of law absolving Indiana Insurance of liability. The trial court found that the policy did not apply where a driver acts intentionally. It further found Adams intentionally collided with Bonnie Michael. Other relevant facts will be supplied as needed.

### ISSUES

Restated, the issues are as follows:

1. Was there sufficient evidence to support the trial court's judgment that the collision between Alamander Rudell Adams and Bonnie Michael was expected or intended?

2. Did the trial court err in finding Alamander Rudell Adams was not a permittee under the provisions of the insurance policy, thereby, relieving Indiana Insurance of liability?

### DISCUSSION AND DECISION

*Issue One*

■ Our standard of review when an appellant raises the question of whether there was sufficient evidence to support the trial court's judgment is clear. "[T]his court does not reweigh the evidence nor rejudge the credibility of the witnesses. The determination of the trial court will be affirmed unless the evidence viewed in the light most favorable to the trial court leads uncontrovertibly to a conclusion opposite the one reached." *Kokomo Veterans Inc., VFW v. Schick,* (1982) Ind.App., 439 N.E.2d 639, 643, *trans. denied* (1983). We have already set out the evidence most favorable to the judgment and believe it is more than sufficient to support the trial court's finding that the collision was intended or ex-

pected. Therefore, pursuant to the express terms of the insurance policy, Indiana Insurance is not obligated to pay any amount for the injuries sustained by Bonnie Michael.

■ The appellant argues, however, that no testimony during the trial of the declaratory judgment action supports the trial court's decision. This contention is based on the fact that the same witnesses who testified during the criminal trial testified during the trial of the action now being appealed and either stated they did not remember their previous testimony or contradicted it. Obviously, the trial judge chose to believe the witnesses' transcribed testimony, from the criminal trial, and ignored or disbelieved the testimony during the instant trial. Bonnie Michael now asks that we reweigh this conflicting testimony and substitute our judgment for that of the trial judge regarding the credibility of these witnesses. Our standard of review prohibits this and we must, therefore, affirm the trial court's determination.

*Issue Two*

■ Even if the collision was not intentional or expected, Indiana Insurance would not be liable since Adams' use of the truck, at the time of the crash, was beyond the scope of the policy's omnibus clause. Adams' superiors permitted him to use the city's truck, involved in the accident, only to go to and from his job at a landfill site. The omnibus clause, in the city's insurance policy, stated coverage would be extended to: "(c) Any other person while using an owned automobile or a hired automobile with the permission of the named insured, *providing his actual operation ... is within the scope of such permission ...* (Emphasis added.)" Record at 571.

Bonnie Michael argues that once permission is given by an insured, the permittee is covered by the policy. Under this "liberal rule," an omnibus clause provides a permittee coverage regardless of whether or not the use of the vehicle was within the scope of the permission granted by the insured.

To support this contention the appellant cites *Arnold v. State Farm Insurance Company,* (7th Cir.1958) 260 F.2d 161. *Arnold* is, however, distinguishable from the case at bar. The omnibus clause at issue in *Arnold* was different in that it did not expressly limit coverage based on whether a permittee used the vehicle within the scope of the permission. The provision interpreted by the court in *Arnold* stated that the term insured: ... includes the named insured and also includes any person ... provided the actual use of the automobile is by the named insured or *with his permission."* *Arnold,* at 260 F.2d at 162–63. Because the Indiana Insurance omnibus clause was more restrictive than this clause, *Arnold* does not apply.

The appellant also relies on *State Farm Fire & Casualty Company v. White,* (1976), 168 Ind.App. 118, 341 N.E.2d 782, *trans. denied,* where the court determined that the "liberal rule," set out in *Arnold,* correctly stated Indiana law. The facts in *White* are also distinguishable because the insured permitted another to use her car without expressly limiting the scope of the permittee's use. The court found, absent an express limitation from the insured, the scope of permissible use could be implicitly extended to cover the driver at the time of his accident. However, in the case at bar, the scope of the permission, granted to Adams, expressly limited his use of the vehicle to travel to and from work. The "liberal rule" does not apply because implication is unnecessary. The scope of Adams' permission was expressly defined by his superior. Therefore, if the use of the vehicle, the day of the accident, was outside the permitted scope, Adams is not covered by the City's insurance policy.

With the law stated, our final inquiry is whether Adams actually used the truck outside the scope of his permission. In the week prior to the accident, Adams was having difficulty with his car and requested permission to use the landfill truck. His supervisor told him he could use the truck to go to and from work. On the day of the collision, Adams was going to Darlington, Indiana, to check on a car. This came out during the criminal trial and both Adams' and his supervisor testified he did not have permission to go to Darlington. Record at 728. Furthermore, it is uncontroverted that the landfill was closed on Sundays. Since the collision occurred on a Sunday it is clear Adams was using the truck outside the scope of his permission. The appellant argues that because the City of Crawfordsville, which initially fired Adams for unauthorized use of the truck subsequently rehired him, we should treat this as evidence that Adams' use of the truck, on the date in question, was, in fact, authorized. However, to overrule the trial court we would have to reweigh this conflicting evidence which is a task our standard of review prohibits. We, therefore, agree with the trial court's determination that the omnibus clause in the insurance policy did not extend coverage to Adams under the circumstances of this case.

Judgment affirmed.

NEAL, P.J., and ROBERTSON, J., concur.