The **HARTFORD INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**VERNON FIRE & CASUALTY INSURANCE COMPANY, Michael J. Leadbetter, Susan Leadbetter, Paul R. Hosler, Inc., and Joe M. Zink, Defendants-Appellees,**

and

**VERNON FIRE & CASUALTY INSURANCE COMPANY, Third Party Plaintiff-Appellee,**

v.

**CHUBB GROUP OF INSURANCE COMPANIES, and Federal Insurance Company, Third Party Defendants-Appellants.**

No. 3–185A6.

Court of Appeals of Indiana, Third District.

Aug. 26, 1985.
Rehearing Denied Oct. 22, 1985.

John F. Lyons, Barrett, Barrett & McNagny, Fort Wayne, for plaintiff-appellant.

Solomon L. Lowenstein, Jr., Fort Wayne, for appellees Michael J. Leadbetter and Susan Leadbetter.

J. Frank Kimbrough, Wilks and Kimbrough, Fort Wayne, for appellee Joe M. Zink.

STATON, Presiding Judge.

This is a Declaratory Judgment action in which the Hartford Insurance Company (Hartford) was found liable on summary judgment to provide for the defense of a personal injury action against the operator of a motor vehicle owned by Hartford's insured. Hartford appeals from the adverse ruling asking this Court to review whether the omnibus clause of a liability insurance policy affords coverage to an employee who knowingly uses a company vehicle for personal use contrary to stated company policy.

We affirm.

Joe M. Zink (Zink) is a heating and air conditioning serviceman employed by Paul R. Hosler, Inc. (Hosler). Zink was assigned a service truck by the company which he was permitted to drive to and from home and service calls or Hosler's place of business. During non-working hours Zink was permitted to keep the truck at home to facilitate responding to emergency service calls at any hour as well as going directly to a job site at the beginning of the workday. There was a company policy, of which Zink was aware, that the service trucks so assigned were to be used only for driving from home to a job site or the Hosler shop and back home. They were not to be used for any personal business, whatsoever.

On June 27, 1981 the annual Hosler golf outing was scheduled for a local golf course. Zink had arranged to ride with a fellow employee. Early the morning of the outing, Zink received a call from Hosler service manager, Roy Weaver, directing Zink to an emergency service call. Zink informed Weaver that he would go from the service call directly to the golf outing in the company truck. Weaver made no response. Zink did, in fact, complete his service call and proceed to Riverbend Golf Course in his service truck.

He spent the day, along with other employees and officers of Hosler, playing golf, drinking beer and eating dinner. Zink left the outing around 7:00 or 7:30 p.m. and instead of going straight home, spent the next seven or eight hours visiting bars in the downtown Fort Wayne area. When Zink finally headed home in the early morning hours of June 28, he collided at an

intersection with a motorcycle driven by Michael Leadbetter. Zink testified that his blood alcohol level tested at .11 and that he was arrested and charged with driving while intoxicated.

On July 11, 1983 Hartford filed its complaint for Declaratory Judgment seeking a declaration that a policy of insurance issued by Hartford to Hosler provided no coverage for Zink. Named as defendants in the action were Leadbetter and his wife, Hosler, Zink, and Vernon Fire & Casualty Insurance Company (Vernon), Zink's personal liability insurer. Vernon filed a Third Party Complaint against Chubb Group of Insurance Companies and Federal Insurance Company (Chubb/Federal), who provided a commercial umbrella policy to Hosler.

Hartford subsequently filed a motion for summary judgment claiming that at the time of the accident, Zink was not using Hosler's vehicle with Hosler's permission and therefore was not an additional insured within the meaning of the policy. The defendants all filed cross motions for summary judgment. The trial court found that there was no genuine issue of material fact to be resolved, and ruled as a matter of law that Zink's use of the vehicle was with Hosler's permission, that Zink was, therefore, an insured under the Hartford policy and as a consequence Hartford was liable to provide a defense for Zink in the Leadbetter's personal injury action against Hosler and Zink. The court also held that since Zink was an insured in the underlying Hartford policy, he was entitled to indemnity under the Chubb/Federal umbrella coverage for any judgment in excess of the Hartford policy.[1] Vernon was found not liable to indemnify Zink because Zink's policy excluded coverage for vehicles furnished to an insured for his continuous daily use.[2]

Hartford claims the trial court erred in not granting its Motion for Summary Judg-

ment and asks this Court to reverse the trial court and enter judgment in favor of Hartford and Chubb/Federal.

Summary judgment is a procedural device enabling prompt disposition of cases where there is no genuine issue of material fact to be determined at trial. *Matter of City of Fort Wayne* (1978), 178 Ind.App. 228, 381 N.E.2d 1093, 1095. The trial court applies the law to the undisputed facts, considering affidavits, depositions, admissions, interrogatories, and testimony, if any. *Oglivie v. Steele* (1983), Ind.App., 452 N.E.2d 167, 169. When considering cross motions for summary judgment, the trial court must deal with each motion separately, construing the facts in favor of the non-moving party. *Matter of Garden & Turf Supply Corp.* (1982), Ind.App., 440 N.E.2d 710, 719. A moving party concedes that there are no issues of fact only for purposes of his own motion. *Fischer v. Kaylor* (1969), 145 Ind.App. 148, 250 N.E.2d 19, 22.

Cross motions for summary judgment do not in themselves establish the absence of a genuine issue of material fact. *Whitcomb v. Young* (1972), 258 Ind. 127, 279 N.E.2d 566, 573. In the instant appeal, however, Hartford does not argue that issues of fact exist which preclude summary judgment in favor of the defendants; therefore we need only determine whether the trial court properly applied the law to the facts.

The Hartford policy issued to Hosler defines an insured in addition to Hosler as follows:

"Anyone else is an insured while using with your permission a covered auto you own, hire or borrow...."

The issue in contention is whether Zink was using the Hosler service truck with the permission of Hosler. Hartford argues that Zink's bar hopping activities were a

---

1. Chubb/Federal was granted leave to adopt Hartford's brief as its own and joins Hartford in this appeal. Since Chubb/Federal raises no additional issues, it is presumed to concede that its liability as excess insurer is dependent upon the determination of Hartford's liability.

2. Hartford presents no argument with regard to the trial court's holding concerning Vernon and Vernon has not submitted a brief; therefore we do not discuss this aspect of the judgment.

knowing violation of company policy and express prohibitions against use of company vehicles for personal business, therefore, Zink was not a permissive user who would be covered under the policy.

Zink and the Leadbetters maintain that Zink's use of the truck to attend the golf outing in the first place was a personal use necessitated by Zink's job obligations and to which the company at least impliedly acquiesced.

The seminal decision interpreting Indiana law on the scope of a permissive user provision in an insurance policy omnibus clause is *Arnold v. State Farm Mutual Automobile Insurance Company*, 260 F.2d 161 (7th Cir.1958). In *Arnold* the court found coverage for a farm laborer who was permitted to use his employer's truck in his duties on the farm but was involved in an accident on his return from an unauthorized trip into town to purchase whiskey. Reviewing Indiana cases which discussed the purpose of insurance policy omnibus clauses, the court found the precise question before it to be

"... whether an employee who uses his employer's motor vehicle with the latter's permission remains within the protection of the omnibus clause when he deviates from the purpose and use for which the permission was granted."

260 F.2d at 163.

The court reviewed the three directions other jurisdictions have taken on the question: (1) the "strict" rule which requires that the use of the vehicle must have been for a purpose reasonably within the scope of the permission given, during the time limits expressed and within the geographical limits contemplated; (2) the "liberal" rule which holds that the initial permission encompasses any use by the permittee even though that use was not contemplated by the insured when permission was given; and (3) the "minor deviation" rule which holds that minor deviations from the contemplated use will not exclude coverage, but major deviations will constitute use without the owner's implied permission. The *Arnold* Court held that Indiana would

follow the liberal rule and that a deviation in the use of the vehicle would not operate to terminate the permission granted to the driver of the insured vehicle. 260 F.2d at 165. The extent of the deviation was not material, said the court; nor did it find any material distinction between the master servant relationship and the more usual situation where the permittee is extended permission to drive for personal or social purposes. *Id.* The Court did acknowledge that under certain circumstances there may be factors which operate to terminate permission such as when the owner expressly forbids the permittee to allow another to use the vehicle. *Id.* (citing *Cocos v. American Automobile Ins. Co.* (1939), 302 Ill.App. 442, 24 N.E.2d 75).

The application of the liberal rule has been affirmed in subsequent Indiana cases. In *State Farm Fire & Casualty Company v. White* (1976), 168 Ind.App. 118, 341 N.E.2d 782 this Court held there was coverage under an omnibus clause where the insured had loaned her car to two friends to go to the store, but who, in fact, went to Ohio. On their return, later in the evening, the pair was involved in a collision. The insured testified that had she known the two would not return the car in time for her to go to church in the evening she would not have granted permission to take the car. 341 N.E.2d at 785. The Court noted that such an after-the-fact conclusion is circumstantial evidence bearing on the factual question of what consent was implied when the car was delivered to the friend. *Id.* The *White* Court also cited the cases of *State Farm Mut. Auto Ins. Co. v. Automobile Underwriters, Inc.*, 371 F.2d 999 (7th Cir.1967) and *Home Mutual Ins. Co. v. Automobile Underwriters, Inc.*, 261 F.Supp. 402 (S.D.Ind.1966) where coverage was found for sub-permittees in the absence of express prohibitions by the insured against such delegation by the original permittee. *See Riverside Ins. Co. of America v. Smith*, 628 F.2d 1002 (7th Cir. 1980) (no coverage for sub-permittee where long established family rule prohibited in-

sured's adult children from allowing others to drive the car).

Hartford also directs our attention to the recent case of *Michael v. Indiana Ins. Co.* (1984), Ind.App., 469 N.E.2d 1222 for further support of its position that Zink did not have Hosler's permission to use the truck at the time and place of the accident. Our First District held that there was sufficient evidence to support the trial court's holding that there was no coverage for Adams, the operator of a city truck, because he had *intentionally* collided with his estranged girlfriend. 469 N.E.2d at 1224. Although not dispositive of the case, Judge Ratliff discussed why there would have been no coverage even if the collision had not been intentional. Adams had been expressly limited to using the truck to travel to and from his job at a landfill site, but on the day of the collision, a Sunday when the landfill was closed, he was using the truck to go to Darlington, Indiana to check on a car. Judge Ratliff decided that the liberal rule would not apply because Adams was acting outside the expressly defined scope of permission granted by his supervisor. *Id.* at 1225.

In the case at bar the circumstances differ from those in *Adams.* Here Zink's use of the truck to go to the golf outing was precipitated by the early morning service call which caused him to lose a prearranged ride. He informed his supervisor, Roy Weaver, that he would go straight from the service call to the golf outing in his service truck. Weaver did not object. In fact, at deposition Weaver said,

"If he would have had time, he would have went home and got his own personal vehicle, but if he didn't have time, there was nothing wrong with him driving the company vehicle to the golf outing."

Trial Record at 160.

Thus Weaver, who was one of two people with authority to authorize the use of company vehicles, acquiesced in this personal use of the company truck for a social purpose. It amounted, in effect, to an exception to the rule against using company vehicles for personal or social use. Weaver did not express any limitations upon Zink's use of the truck in this way, and we must assume that Weaver would know that if Zink arrived in the company truck, he would likewise depart in the company truck.

Hosler provided alcoholic beverages at the golf outing and Zink admitted to drinking eight to ten beers during the course of the day's events. Weaver observed Zink drinking beer on that day and saw him leave the outing in the company truck. He imposed no restrictions on Zink's use of the truck nor did he hear anyone else doing so.

We have no doubt that had Zink's collision with Leadbetter occurred as Zink was going home from the outing without the stops at local bars, that he would be a permitted user under the policy, entitled to coverage. Since he had permission to use the truck for this purely personal, social occasion we can see no reason to resort to the minor deviation rule which has been rejected in Indiana in order to find that Zink's travels among the Fort Wayne bars constituted a material deviation from the permission granted. This may appear to be a harsh result, but as between innocent, injured, third parties and an insured, we think the burden clearly falls upon the insured to enforce any prohibitions upon the use of insured vehicles. Where, as here, the insured relaxed the prohibitions and permitted extended use of the vehicle under conditions which the insured knew included alcoholic beverages; indeed conditions which were orchestrated by the insured, we think the liberal rule is most aptly applied. That is, Zink had permission to use the truck for a social purpose, notwithstanding the usual prohibitions against such use, and his subsequent deviation from what may have been contemplated in that use does not operate to exclude him from coverage under the Hartford policy. Accordingly, since he is an insured under the Hartford policy he is an insured under the Chubb/Federal policy as well.

The judgment of the trial court is affirmed.

HOFFMAN and GARRARD, JJ., concur.