James D. MANOR and Jonathon W. Manor, d/b/a Manor Brothers Concrete; Joseph J. Journay; Robin R. Campbell; Lana K. Campbell; Jo Ellen West, Next Friend of Robin R. Campbell; and Danny Campbell and Leah Campbell, Next Friends of Lana K. Campbell, Appellants–Defendants,

v.

STATESMAN INSURANCE COMPANY, An Indiana Corporation, Appellee–Plaintiff.

No. 33A01–9207–CV–234.

Court of Appeals of Indiana, First District.

April 29, 1993.

Transfer Denied July 20, 1993.

Charles R. Clark, Beasley Gilkison Retherford Buckles & Clark, Muncie, for Lana K. Campbell and Danny and Leah Campbell, as Next Friends of Lana K. Campbell.

David S. Wallace, Warner Wallace McLaren & Dague, Muncie, for Robin R. Campbell and Jo Ellen West, as Next Friend of Robin R. Campbell.

Mark R. Smith, Bishop Smith Bishop & Bemenderfer, Indianapolis, for appellee-plaintiff.

## STATEMENT OF THE CASE

NAJAM, Judge.

Defendants–Appellants, Robin R. Campbell and Jo Ellen West, as her next friend ("Robin"), and Lana K. Campbell and Danny and Leah Campbell, as her next friends ("Lana"), appeal from a declaratory judgment that there was no liability coverage and no duty to defend or indemnify under the omnibus clause in an insurance policy ("Policy") which Plaintiff–Appellee, Statesman Insurance Company ("Statesman"), issued to James and Jonathon Manor, d/b/a Manor Brothers Concrete ("Manor Brothers"). Robin and Lana sustained injuries in an accident on August 13, 1989, ("Accident") with a Manor Brothers' dump truck driven by Joseph J. Journay ("Journay"), a Manor Brothers' employee. The trial court determined that at the time of the Accident, Journay had neither express nor implied permission for personal use of the

dump truck and that he was not an insured under the omnibus clause in the Policy. We affirm.

### ISSUE

The issue on appeal is whether coverage under an insurance policy's omnibus clause can be implied when personal use of the vehicle is subject to an express use restriction.

### FACTS

The facts most favorable to the judgment show that Journay had been employed by Manor Brothers for approximately five and one-half years prior to the Accident. During the period of Journay's employment, Manor Brothers had a company policy requiring that all but three designated employees first obtain permission before using company vehicles for personal business. While this company policy was not written, Journay understood that he needed to obtain permission for such personal use. On many occasions, Manor Brothers instructed Journay to drive company vehicles, including a dump truck, to Journay's residence and to park the vehicle there overnight. Manor Brothers instructed Journay to take vehicles home overnight because it was more convenient for Manor Brothers to have Journay drive a vehicle home in the evening and then deliver the vehicle directly to the next day's job site. Journay drove company vehicles home for that purpose more than most Manor Brothers employees.

Prior to the date of the Accident, Journay did not own an automobile and Manor Brothers also permitted Journay to use other company vehicles, including a flatbed pickup truck, to drive to and from work. Manor Brothers listed Journay as an authorized driver of Manor Brothers' vehicles with its insurance agent.

Approximately four to five months before the Accident, Jonathon Manor reprimanded Journay for using a company truck on a weekend for personal business without first obtaining permission. Jonathon Manor explained to Journay that Journay should have obtained permission prior to

using the truck. Jonathon Manor testified that he contemplated terminating Journay's employment for this incident, but instead decided to overlook Journay's mistake because Journay was a good employee. Record at 225. This was the only time before the Accident that Journay had used a company vehicle for personal use without first obtaining permission.

The day before the Accident, Journay, Dan Manor and Tyler Ridge, another Manor Brothers' employee, were working at a job site in Muncie, Indiana. There was a dump truck hitched to a trailer, a backhoe and a pickup truck at the site. When Dan Manor left the site at noon, he told Journay and Ridge to tow the backhoe with the dump truck to a job site in Parker City, Indiana, after they finished work that day, and to leave the dump truck, trailer and backhoe at that site for work Monday. It was Dan Manor's understanding that Journay would drive the dump truck with attached trailer and backhoe to the Parker City job site, Ridge would follow Journay in the pickup truck, and then Journay would drive Ridge home and take the pickup to Journay's residence for the weekend. Record 270, 271, 289. Dan Manor anticipated that Journay would drive the pickup for personal purposes that weekend; however, Manor did not authorize Journay to drive the dump truck other than to deliver it to Parker City. Dan Manor did not authorize or direct Journay to drive the dump truck to his residence on Saturday and then to the Parker City site on Monday, nor did Journay ask Manor's permission to use the dump truck for personal business that weekend.

Journay did not leave the dump truck in Parker City as instructed but instead drove the truck to his residence in Muncie. On the following morning, a Sunday, Journay telephoned Dan Manor at home to request permission to use the dump truck for his personal business. Dan Manor was not home and Journay spoke to Manor's wife who stated that she did not know anything about her husband's business. Manor's wife advised Journay that he should try to contact her husband again later. Journay testified that he did not call Manor again but "just assumed if he [Dan Manor] didn't want me to [use the truck] he'd call me back." Record at 449. Journay admitted that he should have called Manor and obtained his permission to use the dump truck for personal business. Record at 450. Later that same day, Journay, while driving the Manor Brothers' dump truck, was involved in a collision with an automobile driven by Robin. Robin and Lana, a passenger in the automobile, both sustained personal injuries in the collision.

Statesman filed a declaratory judgment action seeking a determination that Journay was not a permissive user of the dump truck at the time of the Accident, that there was no coverage for the Accident, and that Statesman had no duty to defend or indemnify Manor Brothers or Journay under the Policy for any claim made by Robin and Lana for personal injuries or property damage arising out of the Accident. The Policy provision at issue is an "omnibus" clause which provides:

"The following are 'insureds:'

a. You for any covered 'auto.'

b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow...."

Record at 24. The trial court held that there was no coverage under the omnibus clause in the Policy because Journay had driven the dump truck without Manor Brothers' permission as required by the Policy. Robin and Lana have both appealed that determination and filed separate briefs. We will state additional facts in our discussion as needed.

### DISCUSSION AND DECISION

After a bench trial, the trial court entered its findings of fact, conclusions and judgment. None of the parties requested special findings pursuant to Ind.Trial Rule 52(A). When a trial court enters special findings sua sponte, those findings control only with respect to the issues which they cover. *State ex rel. J.A.W. v. Indiana Juvenile Parole Committee* (1991), Ind. App., 581 N.E.2d 989, 991. Our review of special findings and conclusions is two-tiered: we first determine whether the evi-

dence supports the findings and then determine whether the findings support the judgment. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, 870, *trans. denied.* Special findings will only be set aside if they are clearly erroneous. *Id.*

■ As to any issue upon which the trial court has not entered an express finding, we are not bound by the court's findings and conclusions but we view the case as one decided on a general judgment. *J.A.W.*, 581 N.E.2d at 991. We will affirm the general judgment upon any legal theory supported by the evidence unless uncontradicted evidence leads to a conclusion opposite from that reached in the judgment. *Id.*

■ Robin and Lana allege error in the trial court's conclusion that Journay did not have implied permission to use Manor Brothers' dump truck for personal business. They claim that the trial court erred by failing to apply the "liberal rule" properly because there was "undisputed evidence of implied permission." Robin's Brief at 15. We disagree and conclude that based on its findings of fact, the trial court properly denied coverage under the omnibus clause.

■ Indiana follows the "liberal rule" in interpreting the scope of coverage for permissive use under an insurance policy omnibus clause. *Arnold v. State Farm Mutual Automobile Insurance Co.* (7th Cir. 1958), 260 F.2d 161. In *Arnold*, the Seventh Circuit stated the rule as:

> "one who has permission of an insured owner to use his automobile continues as such a permittee while the car remains in his possession, even though that use may later prove to be for a purpose not contemplated by the insured owner when he entrusted the automobile to the use of such permittee."

*Id.* at 165. Under those circumstances, a deviation in use from that intended by the owner will not operate to terminate the initial permission to use the vehicle granted by the owner and to deny coverage under the omnibus clause. *Id.*

■ However, the court in *Arnold* recognized that in some situations there may be factors which our courts would find to terminate the initial permission. *Id.* Subsequent decisions interpreting *Arnold* have held that initial permission to use a vehicle is terminated where an employer places express restrictions on the use of company vehicles by employees and an employee violates those restrictions. *See Liberty Mutual Insurance Co. v. Metzler* (1992), Ind. App., 586 N.E.2d 897, 904, *trans. denied* (company policy expressly prohibited employees' personal use of company vehicles); *Michael v. Indiana Insurance Co.* (1984), Ind.App., 469 N.E.2d 1222, 1225 (holding no permission to use company vehicle for personal business because employer expressly limited employee's use of company vehicle to travel to and from work). When the owner of a vehicle places express restrictions on its use by others, the focus is not on whether the operator deviated from the contemplated use; the determinative question is whether the operator's use of the vehicle was restricted in the first instance. *Metzler*, 586 N.E.2d at 904.

Robin and Lana argue that Manor Brothers' past practice of allowing Journay and other employees to use company vehicles for personal reasons is tantamount to implied permission for such personal use on future occasions. In other words, they reason that Manor Brothers acquiesced in Journay's personal use of company vehicles despite a company policy generally prohibiting such use.

■ Even when an employer maintains a company policy which prohibits use of company vehicles for personal or social use, coverage will apply under an omnibus clause where the employer acquiesces in an employee's violation of company policy by relaxing those prohibitions. *See Hartford Insurance Co. v. Vernon Fire & Casualty Insurance Co.* (1985), Ind.App., 485 N.E.2d 902, 906, *trans. denied* (liberal rule applied where employer did not object to employee taking vehicle to company golf outing, observed employee consuming alcohol at outing, and saw employee leave outing in company truck). The employer bears the bur-

den of enforcing any restrictions upon the use of company vehicles. *Id.* The evidence showed here that when Manor Brothers allowed Journay to take a company truck home it was always with Manor Brothers' express permission. The only other time Journay had utilized a company vehicle for personal use without first obtaining permission, Manor Brothers reprimanded Journay for violating company policy four or five months prior to the Accident involving Robin and Lana. Record at 224–25. Manor Brothers did not acquiesce in Journay's unauthorized personal use of company vehicles.

■ Robin and Lana also contend that if Journay had successfully contacted Dan Manor on the morning of the Accident, Manor would have given Journay permission to use the dump truck. This is only conjecture. Such an after-the-fact conclusion of what might have been is at most circumstantial evidence bearing on what permission was implied when Dan Manor authorized Journay to drive the truck; however, such conjecture is insufficient to establish implied permission as a matter of law. *See State Farm Fire and Casualty Co. v. White* (1976), 168 Ind.App. 118, 122, 341 N.E.2d 782, 785, *trans. denied.*

■ Violations of use restrictions by a permissive operator of a vehicle may terminate the initial permission. *Metzler,* 586 N.E.2d at 904. Furthermore, permissive use cannot be implied, where, as here, it was understood at the outset that express permission was a condition precedent to Journay's personal use. No implication can arise when an express restriction on the scope of permission excludes the use which is the subject of a coverage dispute. *Michael,* 469 N.E.2d at 1225. Journay testified that he knew he needed permission to use the dump truck for personal business. Record at 449. He even attempted unsuccessfully to comply with the company policy and to obtain permission to use the dump truck on the morning of the Accident, yet he then violated that policy and used the dump truck without permission. Any permission Journay may have received initially from Manor Brothers to drive the

dump truck to another job site was terminated when Journay violated company policy. Here, there was no permission by implication.

The trial court found that Manor Brothers had a company policy which required Journay and all but three designated employees to obtain permission to use Manor Brothers' vehicles for personal business. The court also found that because Journay violated that company policy, Journay did not have implied permission to use the dump truck on the day of the Accident for his personal business. The trial court's conclusions and judgment that the Statesman Policy does not provide coverage under those circumstances is adequately supported by the evidence and the court's findings of fact.

Robin and Lana allege several additional errors to support reversal of the judgment, none of which we find persuasive. They first argue that the trial court erred by applying the minor deviation rule to the Policy to deny coverage. The minor deviation rule provides that only a material or major deviation from the scope of permission, not a minor deviation, will constitute use of the vehicle without the owner's implied permission in order to exclude coverage. *Arnold,* 260 F.2d at 164. However, the trial court did not address the degree of deviation from the permitted use because it found Manor Brothers gave Journay neither express nor implied permission to use the dump truck for his personal business.

Robin and Lana next contend that the judgment is erroneous because the trial court consulted the law of other jurisdictions to resolve the coverage question presented in this case. The trial court did not commit error by looking to other states for guidance. The court ultimately relied upon *Michael* in its findings to deny coverage, *see* Record at 162, and the *Michael* decision and its progeny accurately state Indiana law on this issue.

Robin and Lana also attempt to distinguish this case from *Michael* because the omnibus clause in *Michael* contained additional language which stated that the operator's use of the vehicle must be "within

the scope of such permission" received from the owner. *See Michael*, 469 N.E.2d at 1224. They reason it was error to follow *Michael* here in that we denied coverage in *Michael* because the omnibus clause in *Michael* was more restrictive than the omnibus clause in *Arnold*. *Michael*, 469 N.E.2d at 1225. However, here, as in *Michael*, the controlling factor is the express use restriction imposed at the outset, and in this context the additional language in *Michael* has no particular independent meaning. The inquiry remains the same with or without the additional language. *White*, 168 Ind.App. at 123, 341 N.E.2d at 785. Where the circumstances establish that the use in question is beyond the scope of the permission that might be implied from the permission expressly given, it necessarily follows that the use in question is without permission. *Id.*

The Statesman Policy omnibus clause is virtually identical to the clause in *Arnold*. However, the less restrictive language in the Statesman Policy does not require indiscriminate application of the liberal rule followed in *Arnold*. While the liberal rule has been called the "hell or high water rule," it is not absolute, and it has its limitations. *Arnold*, 260 F.2d at 165; *Metzler*, 586 N.E.2d at 904. We conclude that the trial court correctly applied the reasoning of *Michael* to this case.

▮▮▮▮ Finally, Robin argues that public policy favors coverage here, as manifested by IND.CODE § 27–1–13–7, which requires that an insurance policy issued in this State include an omnibus clause, and by Indiana's financial responsibility statute, IND.CODE § 9–25–4–1, *et seq.* Robin essentially urges an unlimited application of the liberal rule which would provide coverage in every instance when the owner gives initial permission to another to use a vehicle. Robin misconstrues the scope of the liberal rule under Indiana law. IND. CODE § 27–1–13–7 only requires coverage for the owner when the owner gives either express or implied permission to use an insured vehicle, but it does not require coverage for permissive users. *Standard Mutual Insurance Co. v. Pavelka* (S.D.Ind.

1983), 580 F.Supp. 224, 226. The Statesman Policy, by extending coverage to permissive users, provides coverage broader than that required under Indiana law and, thus, does not violate Indiana public policy. *See id.* at 226.

▮▮▮▮ The public represents an anonymous third party to the insurance contract with a clearly definable interest in its interpretation. *Auto Owners Insurance Co. v. Stanley* (N.D.Ind.1967), 262 F.Supp. 1, 5. However, coverage only applies to protect the public when the insured owner fails to make a reasonable effort to become acquainted with the risks of loaning out automobiles to others. *Id.* at 5. We are concerned with protecting the public through omnibus clauses when the owner carelessly entrusts his vehicle to a financially irresponsible permittee. *Id.* Where, as here, the insured owner does not extend permission indiscriminately but actively enforces a company policy which prohibits employees from making personal use of company vehicles without express permission, public policy is not frustrated and coverage need not apply. *But see Hartford Insurance Co.*, 485 N.E.2d at 906 (coverage applied where insured failed to enforce restrictions on use). Indiana public policy does not require that an insurer provide coverage for all those who may use an insured vehicle.

## CONCLUSION

We hold that under Indiana law, the liberal rule does not apply where an employee's personal use of a company vehicle is initially restricted by the employer's instructions or established policy. Under those circumstances, where permission cannot be implied, actual permission, acquiescence or other equivalent authorization is required for coverage under an omnibus clause. Here, the trial court found that Journay's personal use of Manor Brothers' vehicles was restricted by Manor Brothers' company policy, which prohibited the personal use of company vehicles without prior permission, and concluded that permission for such use could not be implied. We will not disturb the trial court's judgment

denying coverage under the Statesman Policy.

The judgment is affirmed.

ROBERTSON and SHIELDS, JJ., concur.