# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3520

GREAT WEST CASUALTY COMPANY,

*Plaintiff-Appellee*,

*v.*

NATIONAL CASUALTY COMPANY, BOGUE
ENTERPRISES, INC., RAY BOGUE, GABRIEL
M. BOGUE, CHRIS T. CRAMER; and CORY,
JOEL AND KYLE CRAMER,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Southern District of Indiana.
No. IP 02-0936-C-M/S—**Larry J. McKinney**, *Chief Judge.*

_____

ARGUED JUNE 10, 2004—DECIDED OCTOBER 6, 2004

_____

Before CUDAHY, RIPPLE and ROVNER, *Circuit Judges*.

CUDAHY, *Circuit Judge*. Sometimes it feels as if the only thing that purchasing insurance actually ensures is that one will eventually have an unpleasant dispute with the insurer over payment on a claim. In this case, Lynn Elevator (Lynn) sold a tractor (as in "tractor-trailer") to Bogue Enterprises (Bogue) under a conditional sales agreement, wherein Lynn would hold title and registration to the tractor and Bogue

would have to comply with a number of restrictions on the use of the tractor until it had completed payment. Predictably (given that the parties are here in court) Bogue got into an accident while driving the tractor. Lynn's insurer, Great West Casualty Company (Great West), sought a declaration that it was not responsible for providing coverage because Lynn did not own the tractor at the time of the accident. The district court granted Great West's motion for summary judgment, and this appeal followed.

## I. BACKGROUND

The facts of this case are straightforward. Since 1992, Bogue Enterprises has purchased a number of tractors and trailers from Lynn Elevator. On November 20, 2001, Bogue entered into an agreement with Lynn to purchase a 1995 Freightliner tractor (the tractor) from Lynn. Each purchase Bogue made from Lynn included the same essential terms, which in the case of the November 20 sale, were as follows:

(a) the purchase price of the tractor was $11,000;

(b) the payment schedule was a minimum of $200 per work week until the purchase price was paid in full;

(c) Lynn would retain title to the tractor until paid in full;

d) Lynn would maintain the license and registration for the tractor in its name until paid in full;

(e) Lynn would maintain the necessary liability and property insurance for the tractor through its own policy until paid in full; however, Bogue would reimburse Lynn for these costs;

(f) The tractor would display only Lynn's signage, placards and permits until paid in full;

(g) Lynn would have priority of dispatch and loading until paid in full;

(h) Lynn had the right to determine which drivers were allowed to operate the tractor until paid in full. The parties agreed that Ray Bogue, Gabriel Bogue and Scott Hensley—the usual Bogue drivers—could operate the tractor;

(i) Lynn would direct loads to Bogue to facilitate payment of the purchase price until paid in full; and

(j) Bogue could not haul for a competitor of Lynn until paid in full.

Shortly thereafter, Bogue took possession of the tractor and made regular payments to Lynn, as per their agreement. On February 22, 2002, Gabriel Bogue was operating the tractor to deliver a non-Lynn load when he got into an accident. Great West Casualty Company, Lynn's insurer brought a diversity suit in the Southern District of Indiana, seeking a declaration that it was not responsible for covering the costs of this accident. National Casualty Company, Bogue's insurer, which might potentially be responsible for providing coverage, defended the action. The district court granted Great West's motion for summary judgment, finding that its policy did not cover claims arising from the accident, because Bogue was the owner of the tractor at the time of the accident. This appeal followed.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo. See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 974 (7th Cir. 2004). In doing so, we construe all facts in favor of the non-moving party. *See id.*; *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2004).

A.  "Owner"

The two insurers in this case disagree as to whether Bogue or Lynn was the owner of the tractor at the time of the accident. Great West is hoping that Bogue owned the tractor so that Bogue's insurer (National Casualty) will be the primary insurer responsible for covering the loss. National Casualty hopes to show that Lynn owned the tractor so that Lynn's insurer (Great West) will be primarily responsible. The parties do not dispute that, if Lynn was the owner, then Bogue was using the tractor with Lynn's permission.

In order to determine whether a party in possession of a vehicle is an owner or a permissive user under an insurance omnibus clause, we look to Indiana's financial responsibility statute for the operation of motor vehicles. *See O'Donnell v. Am. Employers Ins. Co.*, 622 N.E.2d 570, 574 (Ind. Ct. App. 1994). Under this statue, "[i]f a motor vehicle is the subject of an agreement for the conditional sale or lease . . . with the right of purchase upon the performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee . . . the conditional vendee or lessee . . . is considered to be the owner . . . ." Ind. Code § 9-13-2-121; *see also Cincinnati Ins. Co. v. Moen*, 940 F.2d 1069, 1073-74 (7th Cir. 1991). In the present case, the tractor was subject to a conditional sales agreement. Bogue had the right of purchase upon performance of the conditions stated in the agreement and the immediate right of possession. Therefore, a straightforward application of this statute makes it clear that Bogue was the "owner" rather than a permissive user.[1]

---

[1] Even if the statute did not apply in this case, it appears that the result would be the same because under the common law, the "owner" is the party who bears the risk of loss. *See Automobile Underwriters v. Tite*, 85 N.E.2d 365, 367 (Ind. App. 1949) (*en banc*) ("It is generally said that he is the owner of property who, in the case of its destruction, must sustain the loss."). Under Indiana's

(continued...)

National Casualty, however, argues that the courts of Indiana look not just to the statute but to various indicia of ownership and control. It further argues that Lynn maintained "control" over the tractor because the sales agreement contained a number of conditions with which Bogue had to comply until the tractor was paid in full. For instance, the agreement mandated that the tractor display Lynn's signage; Lynn would have priority of dispatch and load; Bogue could not haul for a Lynn competitor and Lynn was permitted to determine who could drive the tractor.

It is true that Indiana courts have discussed other "indicia of ownership," but in no case has an Indiana court used other indicia to contradict the plain language of this statute.[2] In other words, in every case, the purchaser in pos

---

[1] (...continued)
version of the Uniform Commercial Code (UCC), in the case of a sale of a vehicle, the risk of loss passes to the buyer on delivery or receipt. *See* Ind. Code §§ 26-1-2-401; 26-1-2-509(3); *Pekin Ins. Co. v. Charlie Rowe Chevrolet, Inc.*, 556 N.E.2d 1367, 1371 (Ind. Ct. App. 1990); *O'Donnell*, 622 N.E.2d at 575-76. Moreover, under the agreement, Bogue was responsible for the cost of all maintenance, repair and insurance of the tractor. Great West Br. at 10. This suggests that the parties to the agreement intended that Bogue would bear the risk of loss.

[2] National Casualty relies mainly on two Indiana cases for the proposition that Indiana courts consider various indicia of ownership and control. In *O'Donnell*, the court did consider five indicia of ownership: (1) whether the parties executed the sales contract; (2) whether the buyer had remitted a down payment; (3) whether the sale was conditioned on financing and whether financing was obtained; (4) whether the vehicle bore an interim license plate; and (5) whether title had passed from the seller to the buyer. *See* 622 N.E.2d at 573. However, the *O'Donnell* court used these factors only to show that there had been a "completed sale." In the present case, it is without question that the parties completed the
(continued...)

session of a vehicle sold under a conditional sales contract was deemed the owner rather than a permissive user. The agreement in the present case may be considerably more restrictive than the typical conditional sales agreement—which is often conditioned only on regular payment. Indiana's financial responsibility statute, however, also applies to leases, which commonly contain restrictive conditions. *See, e.g.*, Nichols Cyclopedia of Legal Forms Ann. § 6.1803 (2003) (form automobile lease with option to purchase limiting the lessee's ability to use the vehicle out of state, limiting the lessee's ability to assign or sublease, requiring lessee, *inter alia*, to maintain and service the vehicle, to maintain insurance, etc.). This suggests that the Indiana legislature intended the plain language of the statute to apply regardless of the presence of restrictive conditions in the agreement.

Indiana's bright-line test of ownership makes a great deal of sense from a policy perspective. The alternative multi-factor

---

[2] (...continued)

sale transaction. *Id.* Therefore, it is not surprising that these "indicia of ownership" support Bogue's ownership. In both the present case and *O'Donnell*, the parties had executed a contract, were making payment and there were no other conditions precedent to be met. Finally, it should be noted that nowhere does *O'Donnell* state or suggest that the element of "control" should be considered by the court in determining ownership. In *Farm Bureau Mutual Insurance Company of Indiana v. Emmons*, the court did discuss the concept of "control," but only to make the unremarkable point that once a seller has sold an automobile to a buyer, he no longer has "control" over the car and therefore the buyer could not have been using the automobile with the seller's permission. *See* 104 N.E.2d 413, 415 (Ind. App. 1952). The holding in *Emmons* does not necessarily imply that, if the seller had sold the automobile but maintained some level of control (through conditions), the buyer would be using the automobile with the seller's permission.

"control" analysis which Great West is proposing would result in great uncertainty. In conditional sale situations like this one, ownership could only be definitively determined *ex post* by the court. A seller or lessor would be forced to ponder: Did I include too many conditions in this contract? Are the conditions too restrictive? Did I maintain too much control? For instance, imagine if we were to hold that Lynn maintained ownership of the tractor because it retained the right to determine which drivers could operate the tractor until payment was made in full. Would that mean that Seller Corp. maintains ownership of a car if, under the same circumstances, it (a) requires that only licensed or insured drivers operate the vehicle; (b) requires that only drivers with excellent driving records operate the vehicle; or (c) prohibits use of the vehicle by the nation's 50 worst drivers (as identified by name)? What if, instead, Seller Corp. required that the vehicle not be driven on certain highways or at speeds over 80 mph until paid in full? There are infinite permutations, and the consequence of a bad guess would be dramatic.[3]

Great West relies heavily on *Riehl v. Nation Mutual Insurance Company* for the proposition that we must consider various indicia of ownership and control. *Riehl*, however, is distinguishable. *See* 374 F.2d 739 (7th Cir. 1967). In *Riehl*, the parties executed two separate written agreements contemporaneously. The first document was a typical sales agreement, whereas the second agreement stated, "I hereby give Leo Lawson, Jr. permission to use my 1960 Rambler Wagon." *Id.* at 743. The existence of these two seemingly contradictory agreements created at least ambiguity as to

---

[3] The bright-line definition of "owner" has the further benefit of placing the risk of loss on the lower cost accident avoider—the party with possession of the vehicle. It unlikely that any rational sales condition (no matter how restrictive) could alter the fact that the possessor is better able to prevent accidents cheaply than is the seller.

whether the parties intended a sale or a permissive use. That ambiguity does not exist in this case. Moreover, although in *Riehl* we considered various indicia of ownership and control, it was in an effort to determine when the parties intended ownership to pass. In this case, however, the question of *when* ownership would pass (if at all) is answered by the statute. *See* Ind. Code § 9-13-2-121; *O'Donnell*, 622 N.E.2d at 574-76 (finding that the purchaser under a conditional sales agreement was the owner of the vehicle at delivery, despite a provision of the purchase order stating that "Purchaser shall not have any rights in the Vehicle to be purchased until Dealer receives final payment."). To the extent the parties' intent is relevant in this case, it is clear from the record that the parties intended a sale rather than use by permission. *See, e.g.*, App. at 18. A vehicle being used by a person with permission is generally easy to spot, and we spot none here. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Gonterman*, 637 N.E.2d 811, 813 (Ind. Ct. App. 1994) (daughter); *Allstate Ins. Co. v. United Farm Bureau Mut. Ins. Co.*, 618 N.E.2d 31, 32 (Ind. Ct. App. 1993) (sister-in-law); *Manor v. Statesman Ins. Co.*, 612 N.E.2d 1109, 1113 (Ind. Ct. App. 1993) (employee); *Auto-Owners Ins. Co. v. United Farm Bureau Mut. Ins. Co.*, 560 N.E.2d 549, 550-51 (Ind. Ct. App. 1990) (drinking buddy); *State Farm Mut. Auto. Ins. Co. v. Auto. Underwriters, Inc.*, 371 F.2d 999, 1002 (7th Cir. 1967) (son). Therefore, we agree with the district court and conclude that Bogue was the owner of this tractor at the time of the accident.

## B. Use with permission

National Casualty argues that even if Bogue was the owner of the tractor at the time of the accident, Lynn's insurer, Great West, may still be liable because the Great West policy covers "[a]nyone . . . while using *with your permission* a covered 'auto' you own, hire, or borrow." App. at 6 (emphasis added). National Casualty argues that "Bogue would

still be an insured if Lynn Elevator did not own the tractor but it had the power to grant permission to use the tractor, and the tractor was a covered auto that Lynn Elevator *did hire and or borrow*, even if it was not doing so at the time." Nat'l. Cas. Br. at 20 (emphasis added). There are at least two problems with this argument.

First, Lynn did not have the power to grant permission to use the tractor after it sold it to Bogue. *See Emmons*, 104 N.E.2d at 415. The conditional sales agreement did not require Bogue to seek permission before using the tractor, and the agreement did not give Lynn the right to prevent Bogue from using the tractor. App. at 17-21. It is true that Lynn could determine which of Bogue's drivers were permitted to drive the tractor. *Id.* at 19(i). However, under the agreement, Bogue's usual drivers (Ray Bogue, Gabriel Bogue and Scott Hensley) were permitted to drive the tractor. *Id.* If Lynn had later contacted Bogue and insisted that no Bogue driver had permission to drive the tractor, it would likely be in breach of an implied condition of the sales agreement that Lynn would not interfere with Bogue's ability to use the tractor for normal trucking purposes. Ind. Code § 26-1-1-203 ("Every contract or duty within [the UCC] imposes an obligation of good faith in its performance or enforcement."). Similarly, the fact that Lynn had priority of dispatch and load, as well as a non-compete agreement, does not mean that Bogue was using the tractor with Lynn's permission any more than an attorney under a retainer agreement with client A works with other (non-adverse, non-retainer) clients *with the permission* of client A. *See* 7 Am. Jur. 2d Attorneys at Law § 263 (discussing retainer agreements).

Second, National Casualty's argument requires that we read the Great West policy to cover the tractor if Lynn did, at times, hire or borrow the tractor, even if it was not doing so at the time of the accident. In other words, National Casualty argues that "if the covered auto is an auto that Lynn Elevator *ever* hires or borrows, it would fulfill this condition" and thus be covered by Great West. Nat'l. Cas.

Br. at 20 (emphasis added). The Great West policy, however, makes clear that it only covers borrowed or hired tractors *while* they are being hired or borrowed by or from the insured. *See* App. at 8 (policy section B-5(a)) ("This Coverage Form's Liability Coverage is primary for any covered 'auto' *while* hired or borrowed by you *and used exclusively in your business as a* '*trucker*' . . . . Coverage is excessive over any other collectable insurance . . . for any covered 'auto' *while* hired or borrowed from you by another 'trucker.' ") (emphasis added). Both parties agree that this accident did not occur while the tractor was hired or borrowed by Lynn. For these reasons, National Casualty's argument fails and we AFFIRM the decision of the district court.


A true Copy:

         Teste:


                           _____
                           *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*